814 F.2d 277
 Ralph E. NISHIYAMA and wife, Gabrielene Nishiyama, as
surviving parents and next-of-kin of Kathy Jane
Nishiyama, Plaintiffs-Appellants,
v.
DICKSON COUNTY, TENNESSEE, a political subdivision of the
State of Tennessee, Dowell (Doyle) Wall and
Carroll Fiser, Defendants-Appellees.
 No. 83-5683.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 4, 1986.
Decided March 18, 1987.
 
 Richard H. Batson, Daniel, Harvill, Batson & Nolan, Clarksville, Tenn., John Conners, Jr., Kenneth H. King, Jr. (argued), Boult, Cummings, Conners & Berry, Nashville, Tenn., for plaintiffs-appellants.
 Douglas Fisher, Wall & Fizer, Mary Martin Schaffner (argued), R.B. Parker, Jr. (Dickson County), Nashville, Tenn., Connie Jones (argued), for defendants-appellees.
 Before LIVELY, Chief Judge, and ENGEL, KEITH, MERRITT, KENNEDY, MARTIN, JONES, CONTIE,* KRUPANSKY, WELLFORD, GUY, NELSON, RYAN and BOGGS, Circuit Judges.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Ralph and Gabrielene Nishiyama, brought this action under 42 U.S.C. Sec. 1983 against Dickson County, Tennessee, Sheriff Doyle Wall and Deputy Sheriff Carroll Fiser as well as Dickson County. The Nishiyamas allege the sheriffs' policy and practice of entrusting fully-equipped official patrol cars to inmate Charles Hartman, a convicted felon, deprived their daughter Kathy of her life without due process of law. Hartman was allegedly cruising alone in a patrol car when he stopped and then murdered Kathy Nishiyama. The district court dismissed the Nishiyamas' complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.
 
 
 2
 A three-judge panel of this Court initially affirmed the district court's order, but on reconsideration, the same panel reversed that decision, 779 F.2d 52. On motion, a majority of the judges in active service voted to rehear the case en banc, thus vacating the panel opinion and the previous opinion of the Court. Rule 14, Rules of the Sixth Circuit.Following supplemental briefing the case was argued before the full Court.
 
 
 3
 A motion under Rule 12(b)(6) tests whether a claim has been adequately stated in the complaint. The basic requirements for a pleading are set out in Rule 8(a) and call for "a short and plain statement of the claim showing that the pleader is entitled to relief...." In considering a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint. Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir.1983), cert. denied, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). The court must deny the motion to dismiss unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Id.; Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957).
 
 
 4
 The facts that we must accept as true, as alleged by the Nishiyamas, are that at about 8:30 p.m. on November 16, 1981, Kathy Nishiyama was driving on Lafayette Road in Montgomery County, Tennessee. She responded to the signals of a Dickson County Sheriff's Department patrol car that directed her to pull over to the side of the road. When she did, Charles Hartman, the patrol car's sole occupant, approached her and beat her to death.
 
 
 5
 Hartman, a convicted felon and an inmate in the custody of the Dickson County Sheriff's Department, was operating the patrol car with the permission and authorization of defendants Sheriff Doyle Wall and Deputy Sheriff Carroll Fiser. These defendants had placed Hartman on "trusty" status following his transfer from state custody to the Dickson County Jail. They were also on notice that Hartman was dangerous and had assaulted a young woman in the past.
 
 
 6
 Sheriff Wall and Deputy Sheriff Fiser had a policy and practice of several months standing which allowed Hartman to have unsupervised use of Dickson County patrol cars equipped with standard blue flashing lights and official identifying markings. Hartman used the cars to perform official and personal tasks for the two officers and personal tasks for himself. A Dickson County grand jury eventually investigated this policy and recommended that it cease.
 
 
 7
 On the night of the murder, Hartman drove Deputy Fiser from the jail to Fiser's farm. After arriving, Fiser told Hartman to drive the fully-equipped and clearly marked patrol car back to the jail. From this point onward, he had full unsupervised possession of the car. He then began roaming the highways of Dickson, Houston, and Montgomery Counties, and stopped several motorists by flashing the patrol car's blue lights. When Montgomery County officials learned that a Dickson County Sheriff's car was stopping motorists in their county, they notified the Dickson County dispatcher, who in turn notified Wall and Fiser. Wall and Fiser did nothing. Not until ten hours after he had left the jail did Hartman finally return. The Nishiyamas contend that during the interim he used the patrol car, a clear instrument of law enforcement, to pull over their daughter's car and murder her. They further contend that Wall and Fiser's policy of allowing Hartman unsupervised use of an official patrol car and their actions in accordance with that policy were grossly negligent and proximately caused Kathy Nishiyama's death.
 
 
 8
 In order to sustain a claim under section 1983, the plaintiffs must satisfy the following requirements: 1) the conduct at issue must have been under color of state law; 2) the conduct must have caused a deprivation of constitutional rights; and 3) the deprivation must have occurred without due process of law. See Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). After careful review of the claims and assuming the facts as alleged to be true, we hold that the Nishiyamas have successfully stated a claim as required by Rule 8(a) of the Federal Rules of Civil Procedure and that their complaint was improperly dismissed as a matter of law under Rule 12(b)(6).
 
 
 9
 In considering the first prong of the test, the district court correctly concluded that the defendants' practice of providing Hartman with a marked and fully-equipped patrol car was action taken under color of state law. The sole issues left for our consideration then are whether the conduct of the defendants caused a deprivation of Kathy Nishiyama's constitutional rights and if so, whether this deprivation occurred without due process of law.
 
 
 10
 Kathy Nishiyama's interest in preserving her life is one of constitutional dimension. While the fourteenth amendment does not guarantee life, it guarantees that the state cannot deprive an individual of life without due process. First we consider whether the state deprived Kathy Nishiyama of her life by the conduct of its agents.
 
 
 11
 The Supreme Court in recent years has considered the limits of liability of government officials under section 1983 for a murder committed by someone other than a government official. In Martinez v. California, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), the plaintiffs sought to hold California parole officers liable under section 1983 for the parole board's decision to release a parolee, who five months later murdered plaintiffs' daughter. The Court concluded that the plaintiffs had failed to state a claim. In determining the issue of proximate cause, the Court emphasized three factors: 1) the parolee was in no sense an agent of the parole board; 2) the parole board had no reason to know that the decedent, as distinguished from the public at large, faced any special danger; and 3) the death was too remote a consequence to hold the parole board responsible under the federal civil rights law. Id. at 285, 100 S.Ct. at 559. On similar facts this Court held in Janan v. Trammell, 785 F.2d 557 (6th Cir.1986), that the death of Paul Janan at the hand of a parolee within eight weeks of his release was too remote to support a claim against the parole board under section 1983. The Nishiyamas' claims present a different framework from the situations presented in Martinez and Janan; an analysis of the factors to be considered when determining proximate cause will illustrate why Martinez does not govern the current action and why we decide today that there is an arguable claim that the state deprived Kathy Nishiyama of her constitutional interest in life.
 
 
 12
 Unlike the released parolees in Martinez and Janan, Hartman remained in the custody of the Dickson County Sheriff's Department before, during, and after the murder. There is no indication that Hartman ever attempted to flee this custody. During Hartman's ten-hour journey from Fiser's farm to the Dickson County Jail, the defendants never reported or otherwise treated him as an escapee. In accordance with established practice, Wall and Fiser authorized Hartman to use and have sole control over the patrol car for his own private purposes. This custodial relationship between Hartman and the Dickson County Sheriffs supports a finding that Wall and Fiser had the power and authority to direct Hartman's actions in a way that was absent in Martinez and Janan.
 
 
 13
 Further, unlike Martinez and Janan, the Nishiyamas claim that Wall and Fiser should have known that their practice of allowing Hartman to have unsupervised use of the patrol car made motorists like Kathy Nishiyama particularly vulnerable to potentially dangerous situations. This is not a case like Martinez where the parolee had been out of police custody for several months and thus the identity of potential victims was difficult to define. Here the radius of harm is more distinct. When Fiser and Wall allowed Hartman to drive unescorted between the jail and Fiser's farm, persons in the vicinity were at risk, particularly motorists who out of respect for and fear of law enforcement vehicles respond to blue flashing lights. The identification of potential victims became even easier once the sheriff's department was notified that its patrol car was stopping motorists in Montgomery County. The defendants should have known that Hartman was stopping unwitting motorists under the aura of law enforcement represented by the patrol car and that, as a result, drivers like Kathy Nishiyama in Montgomery and surrounding counties were in jeopardy.
 
 
 14
 In final contrast, the death of Kathy Nishiyama cannot be viewed as so remote a consequence of the defendants' actions as to automatically preclude liability under section 1983. Through their established practice of entrusting the police car to Hartman, Wall and Fiser set in motion the specific forces that allowed him to commit his crime. They apparently saw no need to respond to the dispatcher's report alerting them to the possibility that Hartman was using the Dickson County patrol car to stop vehicles travelling the roads of Montgomery County. These subsequent failures to act extended Hartman's opportunity. Neither on that night nor on any other occasion did they do anything to stop or disavow Hartman's use of the patrol car for his private purposes. Because of this practice of the sheriff's department, Hartman was able to use the apparent authority of the patrol car to direct Kathy Nishiyama to stop several blocks from her home and thus become his victim.
 
 
 15
 None of the cases following Martinez contains a similarly close relationship between the criminal acts and the defendants' acts under color of state law. See Jones v. Phyfer, 761 F.2d 642 (11th Cir.1985) (no special relationship between rape victim and state employees who released rapist); Fox v. Custis, 712 F.2d 84 (4th Cir.1983) (no constitutional duty to protect general public from random criminal violence absent a special relationship); Humann v. Wilson, 696 F.2d 783 (10th Cir.1983) (victim's rape too remote a consequence of state's decision to transfer inmate from jail to minimum security facility to sustain civil rights claim); Wright v. City of Ozark, 715 F.2d 1513 (11th Cir.1983) (rapist had no relationship with city officials who allegedly suppressed information concerning prior rapes in the city); and Bowers v. DeVito, 686 F.2d 616 (7th Cir.1982) (mental health officials not responsible for subsequent criminal acts of mental patient released from their care). In these cases the state officers possessed information that circumstances endangering the public existed. Yet in none of the cases did the state officers by their acts facilitate the crime by providing the criminal with the necessary means and the specific opportunity to commit his crime. In Martinez and Janan, the only action of the state officers was their decision to release from custody the person who subsequently committed murder. In the present case, the officers gave Hartman the car and the freedom to commit the crime.
 
 
 16
 In sum, accepting all of the allegations of the Nishiyamas as true, we hold that the Nishiyamas have established a claim that the defendants' conduct under color of state law deprived Kathy Nishiyama of a constitutionally-protected interest in life. We next consider whether the deprivation occurred without due process of law.
 
 
 17
 In Wilson v. Beebe, 770 F.2d 578, 583 (6th Cir.1985), this Court recognized that section 1983 provides a remedy for both procedural and substantive due process violations, and the Supreme Court made clear in Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986), that there are certain types of government acts that violate the Due Process Clause regardless of the procedures used to implement them. When the government engages in such conduct, there is a remedy under section 1983. The Due Process Clause forbids these actions in order to prevent "governmental power from being 'used for purposes of oppression.' " Daniels, 106 S.Ct. at 665 (quoting Murray's Lessee v. Hoboken Land & Improvement Co., 18 How. (59 U.S.) 272, 277, 15 L.Ed. 372 (1856)). Whether dealing with procedural or substantive due process, "[t]he touchstone ... is protection of the individual against arbitrary action of government." Daniels, 106 S.Ct. at 665 (quoting Dent v. West Virginia, 129 U.S. 114, 123, 9 S.Ct. 231, 233, 32 L.Ed. 623 (1889)).
 
 
 18
 The Nishiyamas allege that the defendants' gross negligence resulted in a violation of substantive due process. We must address therefore whether such conduct is a sufficient basis for a substantive due process violation.
 
 
 19
 The Supreme Court recently decided the question of whether mere negligence provides a basis for a claim under section 1983. In Daniels, 106 S.Ct. at 663, the Court held that due process "is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property." (Emphasis in original.) This conclusion is based on the premise that simple negligent conduct does not constitute a "deprivation" within the meaning of the term in the Due Process Clause. Id. at 665. The Court found no occasion, however, to consider "whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause." Id. at 667 n. 3.
 
 
 20
 Similarly, this Court has not previously decided the question of whether something less than an intentional act but more than simple negligence might invoke due process protection. In Wilson v. Beebe, 770 F.2d at 586, this Court held that the mere negligence of a state police officer who wounded an arrestee while trying to handcuff him did not constitute a substantive due process violation of the type described in Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1951) (pumping suspect's stomach to recover physical evidence "shocks the conscience") and Johnson v. Glick, 481 F.2d 1028 (2d Cir.), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973) (unjustified attack on suspect by police officers violated due process).
 
 
 21
 In Janan v. Trammell, 785 F.2d at 558, the plaintiffs alleged gross negligence in their complaint against the parole board. However, in that case, we declined to deal with the relationship between varying degrees of negligence and possible due process violations. Relying on the ruling in Martinez, we held that Janan's death was too remote a consequence to sustain an action under section 1983. Specifically, we left unresolved the question of whether the actions of the parole officers constituted a degree of negligence akin to the "mere negligence" of Daniels, and therefore precluded a due process cause of action, or something greater.
 
 
 22
 We believe that the allegation in the present complaint of gross negligence on the part of the defendants was sufficient to charge them with arbitrary use of government power. The complaint also pled that the result of this abuse of power was the death of Kathy Nishiyama. These allegations are sufficient to state a claim for a substantive due process violation that would withstand a motion to dismiss.
 
 
 23
 We acknowledge that the term "gross negligence" evades easy definition. In our view, a person may be said to act in such a way as to trigger a section 1983 claim if he intentionally does something unreasonable with disregard to a known risk or a risk so obvious that he must be assumed to have been aware of it, and of a magnitude such that it is highly probable that harm will follow. The defendants in this case intentionally gave Hartman full unsupervised use of the officially marked and equipped patrol car. After they were notified that one of their patrol cars was stopping motorists in Montgomery County they intentionally failed even to investigate, much less attempt to recall Hartman to the jail.
 
 
 24
 The defendants should have appreciated the risk of permitting Hartman to have unsupervised use of the Dickson County Sheriff's car. After they learned their patrol car was being used to stop motorists, the risk ceased to be speculative. Undeniably, there was a high probability of harm resulting from the fact that Hartman, a convicted felon entrusted to their custody, was allowed unsupervised use of an official patrol car. This is tragically underscored by the harm that eventually befell Kathy Nishiyama.
 
 
 25
 The wanton disregard on the part of the defendants amounted to more than mere thoughtlessness. The defendants continued the practice of giving trusties use of patrol cars even after the murder. Only on the recommendation of the grand jury did the custom of the sheriff's department end. The defendants' actions cannot be attributed to simple inattention or carelessness. Rather, the defendants consciously established a policy of allowing trusties to have use of official patrol cars with a seeming indifference to the consequences. The defendants consciously and voluntarily failed to respond to the danger presented by Hartman's use of the car to stop motorists. We hold that such reckless indifference to the risk posed by their actions is sufficient to establish a violation of substantive due process under section 1983. It is particularly troubling when persons charged with ensuring public peace and order engender peril as a result of their outrageous conduct.
 
 
 26
 Viewing the facts alleged as true as we must under Rule 12(b)(6), the defendants' conduct is the type of governmental action which is inherently impermissible. We hold that the Nishiyamas' allegations establish a claim. As to the specific liability of Dickson County itself, we leave that decision to the district court which did not reach that particular issue before.
 
 
 27
 The judgment of the district court is reversed.
 
 WELLFORD, Circuit Judge, dissenting:
 I. Factual Background
 
 28
 This is a tragic case involving a brutal murder of a young woman by an inmate of a county jail in Tennessee, who was permitted by a deputy sheriff at the time to drive alone an official county patrol vehicle.
 
 
 29
 Plaintiffs, Ralph and Gabrielene Nishiyama, of Montgomery County, Tennessee, allege violations of 42 U.S.C. Secs. 1983 and 1985(3), and assert a pendent state claim for wrongful death in the murder of their daughter by an inmate[1] of the Dickson County, Tennessee jail. In September, 1983, the trial court entered a memorandum and order granting defendants' motion to dismiss. The Nishiyamas appeal only the dismissal of their Sec. 1983 action for failure to state a claim upon which relief could be granted.
 
 
 30
 In the context of a motion to dismiss for failure to state a claim on which relief could be granted, the court treats the facts alleged in the complaint as true. Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir.1983), cert. denied, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). On November 16, 1981, shortly after leaving a friend's home around 8:30 p.m., Kathy Jane Nishiyama, in response to the signals of a Dickson County Sheriff's Department patrol car, pulled to the side of the road. Charles Edward Hartman, a convicted felon, who was treated as a "Trusty" of the Dickson County Jail, driving alone the patrol car, approached Kathy Nishiyama and beat her to death, leaving her body in a remote area.
 
 
 31
 Hartman was then serving the balance of his Tennessee state imposed sentence for burglary in the custody of the Dickson County Sheriff's Department. The district court found that the Tennessee statute under which Hartman was apparently transferred from the state to the Dickson County Jail permits only nondangerous felons to be so assigned. The Nishiyamas allege that the defendants knew or should have known that Hartman was dangerous and allege further that he had assaulted a young woman in the past.
 
 
 32
 Sheriff Wall placed Hartman on trusty status. It was alleged that defendants Wall and Fiser adopted a policy of allowing Hartman to have unsupervised use of Dickson County patrol cars to conduct official tasks for them, and to perform tasks for their personal benefit and for his own benefit. The Nishiyamas allege that this policy had been in effect before the time of the murder. The Nishiyamas, however, do not challenge the Tennessee trusty system in general, only the negligent failure of Wall and Fiser to undertake "reasonable standards" in connection therewith.[2] On the night of the murder, Deputy Fiser instructed Hartman to drive him to his farm. Upon arriving at his farm, Fiser turned sole possession of the fully equipped and plainly marked patrol car over to Hartman.[3]
 
 
 33
 After leaving Fiser's farm, Hartman apparently proceeded to prowl the highways of Dickson, and adjacent Houston and Montgomery counties. He was allegedly absent for a number of hours. He accosted and stopped several motorists by flashing the patrol car's blue lights. Montgomery County officials learned that a Dickson County Sheriff's car was stopping motorists in their county under suspicious circumstances. At some unspecified time during the evening hours, they notified the Dickson County dispatcher in the sheriff's office, who allegedly notified Wall and Fiser thereafter, but the time of notification is also not indicated in the complaint. Wall and Fiser allegedly did nothing after they were notified about this activity. Plaintiffs allege that Wall and Fiser's policy of placing Hartman on trusty status and allowing him unsupervised use of an official patrol car amounted to "negligence of the grossest type," which proximately brought about their daughter's death.
 
 II. The District Court's Decision
 
 34
 The district court conceded that the decision to make Hartman a "trusty" and to give him unsupervised use of the patrol car was a decision made or conduct undertaken under "color of state law by a person or persons acting in an official capacity." This finding, however, does not end the "color of state law" analysis. In order to state a claim under Sec. 1983, the district court held, in effect, that the plaintiff must assert that the conduct under color of state law caused or directly brought about, as a foreseeable consequence, a deprivation of plaintiff's constitutional rights. Further, the district court held that the plaintiff must aver that the alleged deprivation of constitutional right occurred without due process of law.
 
 
 35
 The district court reasoned that Hartman's unauthorized action and assault resulting in a "random murder ... were not under color of law of the sheriff or his deputy. Hartman's individual actions cannot be characterized as official actions." In summary and conclusion, the district court stated that "the plaintiffs have failed to allege a constitutional deprivation of rights." The district court concluded, furthermore, that although the alleged decision to grant Hartman "a limited liberty interest" in use of the patrol car was one made under color of state law, his actual terrible misuse of the car in furtherance of a criminal design did not constitute an action which could be attributed to any of the defendants; the court found "no allegation of fact indicating that any official approved or knowingly acquiesced in the conduct of Hartman," and thus there was "no deprivation of a constitutional right." In addition, the court concluded that "the alleged misuse of the 'trusty system' was not so egregious as to infer a deprivation of constitutional rights ... [there was] no alleged malice, but only negligence and possible recklessness." The district court thus differentiated the negligent or reckless action of the county sheriff and his deputy from the willful and malicious action of the county officials in Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), a criminal civil rights violation prosecution.
 
 
 36
 In addition to finding no deprivation of a constitutional right within the meaning of the civil rights statutes involved, the district judge found no violation of procedural due process within the meaning of Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). (The rationale of Parratt, concerning a property interest, was later held in Wilson v. Beebe, 770 F.2d 578 (6th Cir.1985) (en banc) to apply also to deprivation of liberty interest.)
 
 III. County Liability
 A. Respondeat Superior
 
 37
 Dickson County is not liable to plaintiffs on the basis of respondeat superior for the actions of its agents or employees even if they involve violations of a constitutional right. City of Oklahoma City v. Tuttle, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To put it another way, Dickson County may be held accountable for the actions of its agents or employees only if the deprivation was the result of municipal "custom" or "policy". City of Oklahoma City, 471 U.S. at 818, 105 S.Ct. at 2433; see also Monell, 463 U.S. at 694, 98 S.Ct. at 2037. The county then, is liable only for its own independent actions in the form of policymaking, not merely as employer for the negligent or reckless acts of its employees or agents. For Dickson County to be liable, the policy of the county in this case must be alleged proximately to have subjected Kathy Nishiyama to a deprivation of her constitutional rights. Bennett v. City of Slidell, 728 F.2d 762 (5th Cir.) (en banc), reh'g den., 735 F.2d 861 (5th Cir.1984), cert. denied, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). It is not enough that Deputy Sheriff Fiser, through gross negligence, permitted a prisoner trusty to use the county patrol car assigned to him, and that the trusty then committed a random act of murder against a citizen of another county.[4] Plaintiffs have not alleged any harm to other citizens by reason of alleged prior similar actions on the part of Wall and/or Fiser. Nor have plaintiffs alleged that the county had a policy of failing to investigate promptly official reports from another county about any unusual conduct of a person operating a Dickson County patrol vehicle.
 
 B. County Negligence or Knowledge
 
 38
 Recognizing the authority cited above, the complaint does not allege that Dickson County is liable as employer of Wall or Fiser. Rather, it asserts that the county was "negligent" in that it had "actual knowledge or should have known of the pre-existing prior pattern of wrongful conduct of the sheriff ... in permitting the said Hartman to have free and unobstructed use of patrol cars on prior occasions." The complaint does not say that the county court or that a county executive or official permitted the unsupervised use by a "trusty" of the patrol car; rather it says, in effect, that such responsible county authorities, who set county policy, knew or should have known that the sheriff and his deputy were allegedly permitting this activity through their negligence or "wrongful conduct."
 
 
 39
 If the county officials did not know about the alleged actions of Wall and Fiser in allowing a jail inmate the use of a patrol car, then, of course, the county was merely negligent in failing to discover a course of action by the sheriff's office that could lead to prisoner escape or other detrimental results or activity. Despite the allegation that Kathy Jane Nishiyama's wrongful death was "reasonably foreseeable" as a consequence of this negligence, this negligence may not have been the proximate cause of harm and death to a citizen of another county. The Supreme Court noted very recently in Davidson v. Cannon, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), that "in Daniels we held that the Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty or property." --- U.S. at ----, 106 S.Ct. at 670 (emphasis added) (citing Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)).
 
 
 40
 If the county officials knew about and did not act to stop the sheriff's conduct in allowing Hartman's use of the patrol car, then the degree of negligence in allowing this action to continue may be greater than mere ignorance or a failure to discover; again, however, alleged knowledge by county officials of the sheriff's course of action in allowing the prisoner to be entrusted with a patrol car does not mean that the murder of the young victim was a foreseeable and intended or proximate consequence. Neither ignorance of the sheriff's alleged policy, nor knowledge of, nor acquiescence in, this alleged course of conduct by the sheriff and his deputy amount to any intentional or willful action by the county to harm plaintiffs or anyone else, or to deprive Nishiyama of her life. Daniels, 106 S.Ct. 662, Davidson, 106 S.Ct. 668. We have recently held that a Sec. 1983 violation of substantive due process by reason of alleged reckless and/or negligent conduct of a law enforcement officer requires intentional action. Wilson v. Beebe, 770 F.2d 578 (6th Cir.1985) (en banc).
 
 
 41
 Even if the negligent act involved here on the part of the county were an official act or sanction which "shocks the conscience," so long as it was not intentional nor an official county policy intended to be directed against a specific individual, it is not actionable against the county. Wilson v. Beebe, 770 F.2d at 586; see also Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). Section 1983 does not impose liability for violations of duties that arise out of tort law. Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); Wilson, 770 F.2d at 582.
 
 
 42
 We would not in this instance conclude that the county's action or failure to act was conduct that shocks the conscience. "[W]here a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required." Davidson, 106 S.Ct. at 670. (emphasis added). Hartman was not an agent of the defendant county, as the district court determined, and it is not his conduct that we examine.
 
 
 43
 Nor is it enough, in our view, that plaintiffs have alleged that defendants' negligence (even if characterized as gross negligence) caused the "reasonably foreseeable" death of Kathy Nishiyama, if the consequence of the grossly negligent action was remote as a matter of law, intended by inference or otherwise. In Martinez v. California, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), the Court assumed, as the complaint alleged, that defendant parole officials in a Sec. 1983 action "knew, or should have known, that the release of Thomas [the murderer of plaintiff's decedent] created a clear and present danger that such an incident would occur." Id. at 280, 100 S.Ct. at 556. The Court unanimously held, nevertheless, that the complaint stated no constitutional cause of action despite plaintiff's characterization of defendants' actions as "reckless, willful, wanton and malicious" in releasing a convicted rapist and "Mentally Disoriented Sex Offender," for whom the convicting court recommended no parole. Id. at 279, 280, 100 S.Ct. at 556. The Court concluded without dissent that regardless of whether defendants had committed a tort that "proximately caused [the victim's] death," the action by the parolee was not state action as a matter of law and defendants "did not 'deprive' appellants' decedent of life within the meaning of the Fourteenth Amendment." Id. at 285, 100 S.Ct. at 559. Martinez governs the issue of the county's duty towards Nishiyama and the issue of whether Hartman's action was state action.[5] We do not in so concluding the disposition of this issue minimize the characterization of gross or reckless conduct on the part of Wall and Fiser. We find no meaningful distinction in principle between the behavior of defendants here and the parole officials' action in Martinez, which was performed in the course of official duty and directed towards one then in a custodial relationship to defendants.
 
 
 44
 Furthermore, in Martinez,[6] the Court did not portray as merely incidental the additional consideration that the parole board was not aware that the parolee Thomas' release created a special danger to the victim Martinez. Similarly, plaintiffs here do not allege that Hartman posed a particular danger to Kathy Nishiyama that was distinct from the dangers he posed to the general public. We conclude, moreover, that plaintiffs have not established a reasoned basis for treating as controlling and significant the brief period during which Hartman was at large in comparison to the several months period parolee Thomas was at large in Martinez.
 
 
 45
 The remoteness discussed in Martinez was not simply a matter of time. Other factors were mentioned. For example, the Court observed that a parolee is in no sense an agent of the state in choosing to commit a crime.... Also, the court considered the fact that the plaintiffs' decedent did not stand in any special relationship to the parolee from which the parole officers may have inferred a special danger to her.
 
 
 46
 Humann v. Wilson, 696 F.2d 783, 784 (10th Cir.1983) (citations omitted). The actions of Wall and Fiser here burdened the public in general with a risk of harm while Hartman was released as a trusty for a number of hours; the actions of the Martinez defendants burdened the public at large immediately and for many months with a risk of harm in the release of a known dangerous offender from custody. While it may be true that persons in the vicinity, more likely motorists than others, were placed at greater risk, Kathy Nishiyama was one of many in Dickson County or surrounding counties who might have been a potential victim; she was not more particularly or personally placed at risk than were the individual victims in Martinez. See also Janan v. Trammell, 785 F.2d 557 (6th Cir.1986).
 
 
 47
 The county, in all events, would not be liable by reason even of its alleged grossly negligent oversight with respect to Hartman's acts. See Fox v. Custis, 712 F.2d 84 (4th Cir.1983) (parolee, negligently not taken into custody, within a few days murdered a young woman; held no cause of action under Sec. 1983 against officials).[7] See also Jones v. Phyfer, 761 F.2d 642 (11th Cir.1985) (even shorter time span between an inmate's release from custody and rape of a nearby victim, yet a similar determination of no Sec. 1983 liability). In sum, no "special relationship" existed between the state and the victim of a random murder committed by one who was, or should have been, held in restraint or custody by the state.
 
 
 48
 The Nishiyamas cite case authority as support for the proposition that either "sufficiently egregious" official action, or omissions amounting to "deliberate indifference" by state officials will create a constitutional deprivation which satisfied Sec. 1983. In each case cited, however, including one from this court, Fitzke v. Shappell, 468 F.2d 1072 (6th Cir.1972), the state had singled out the victim from the general population and had created a special vulnerability distinct from that of the general public. See, e.g., Brandon v. Holt, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878. The victim was either a prisoner in state custody or being subjected to arrest by state officials. Officers of the state themselves, as in Brandon v. Holt and Fitzke, or a fellow prisoner violated the victim's rights. The Nishiyamas have not demonstrated that the state or agents of the county similarly singled out their daughter or that these defendants had any special relationship with her. Therefore this claimed authority does not support plaintiffs' assertion of a cause of action under Sec. 1983.
 
 
 49
 No basis exists for any finding under the assertions of the complaint that after Fiser "released" Hartman, even temporarily, that he could be considered in a different category from those offenders released in Martinez and therefore, somehow found to be within Wall and Fiser's (or the county's) continuing power to direct or control Hartman's actions in his random and murderous activity after temporary release. That Hartman may have been released without supervision for a time, through gross negligent entrustment of a highway patrol vehicle, does not support plaintiffs' argument that this rendered Hartman the agent of any defendant, especially in the commission of a random murder. Nor does Hartman's return after committing the crime make him an agent of Wall and Fiser.
 
 
 50
 C. No State Duty to Protect Member of Public
 
 
 51
 Courts have consistently refused to recognize a duty on the part of the state, or a constitutional right of citizens to expect from the state, that it protect individual members of the public from random acts of violence. See, e.g., Beard v. O'Neal, 728 F.2d 894, 900 (7th Cir.) (holding that even when an FBI informant accompanied a murderer of plaintiff's brother no constitutional cause of action was asserted against FBI supervisors because "no special relationship" between the parties gave rise to a constitutional duty to provide protection), cert. denied, 469 U.S. 825, 105 S.Ct. 104, 83 L.Ed.2d 48 (1984); Bowers v. DeVito, 686 F.2d 616, 618 (7th Cir.1982) (holding: "[T]here is no constitutional right to be protected by the state against being murdered by criminals or madmen."). The Eleventh Circuit has noted:
 
 
 52
 Regardless whether the cases speak in terms of lack of duty or lack of causation, the result is the same: generally, the due process clause of the Constitution does not protect a member of the public at large from the criminal acts of a third person, even if the state was remiss in allowing the third person to be in a position in which he might cause harm to a member of the public, at least in the absence of a special relationship between the victim and the criminal or between the victim and the state.
 
 
 53
 Wright v. City of Ozark, 715 F.2d 1513, 1515 (11th Cir.1983).
 
 
 54
 Finally, this court in Janan v. Trammell, 785 F.2d 557 (6th Cir.1986) has recently endorsed the interpretation herein attributed to the many cases from other circuits that have followed Martinez in circumstances analogous to those in the instant case. A substantially smaller amount of time lapsed in Janan between the Tennessee state officials' alleged grossly negligent release on parole of a known violent offender, who continued to make threats against the lives of others, and his random murder of plaintiff's decedent. The Janan court, nonetheless, considered Martinez, despite its longer time gap, to be controlling and affirmed a Rule 12(b)(6) judgment of dismissal of plaintiffs Sec. 1983 claim:
 
 
 55
 We decline to place such weight on the temporal factor. Rather, the proper analysis is whether a special relationship exists between the criminal and the victim or between the victim and the state or whether there is some showing that the victim, as distinguished from the public at large, faces a special danger by the parolee's release. In so holding, we follow other circuits that have held that absent a special relationship between the criminal and the victim or the victim and the state, no due process violation can occur. Jones v. Phyfer, 761 F.2d 642 (11th Cir.1985); Fox v. Custis, 712 F.2d 84 (4th Cir.1983); Humann v. Wilson, 696 F.2d 783 (10th Cir.1983); Bowers v. DeVito, 686 F.2d 616 (7th Cir.1982).
 
 
 56
 As the Seventh Circuit stated in Bowers, "there is no constitutional right to be protected by the state against being murdered by criminals or madmen." Bowers, 686 F.2d at 618.
 
 
 57
 785 F.2d at 560 (emphasis added).
 
 
 58
 There is no basis for this court to depart from Judge Martin's considered rationale, so recently stated in Janan, that absent an allegation of a "special relationship ... between the criminal and the victim or between the victim and the state," in this kind of situation, tragic as it is, no constitutional or Sec. 1983 cause of action is stated. This is so particularly when it is clear and uncontroverted that the unfortunate victim was in the same status as the public at large (or the motorists using the highways generally) potentially subject to a random murder. Gross negligence was charged in Janan just as it was charged in this case, and, as a consequence, the plaintiffs alleged in Janan that a wrongful death occurred as plaintiffs have alleged here. In Janan, the plaintiffs alleged that defendant state officials knew that the risk of allowing the violence-prone parolee, who was making threats against the family of a police officer, was an obvious risk, and it could certainly be inferred that it was probable that serious injury or death might follow. Here, plaintiffs assert that the county and individual defendants knew or should have known of a similar risk. Although the acts of the defendants in the instant case might be classified as "more unreasonable" than those in Janan, the basic issues are the same; Martinez and its progeny, especially Janan, compel a conclusion that plaintiffs have failed to state a cause of action against the county. The county had no constitutional duty to protect Nishiyama and she had no constitutional "right" to be protected from an assault by Hartman. Holding the county liable under this claim would "ignore the fundamental requirement that there be a causal connection between the action or inaction on the part of the municipality and the constitutional wrongs visited on the plaintiff," Landrigan v. City of Warwick, 628 F.2d 736, 747 n. 7 (1st Cir.1980), even if plaintiffs had established a constitutional deprivation on the part of any defendant. In this respect, we would affirm the district court in its judgment for Dickson County.
 
 IV. Claims Against Wall and Fiser
 A. Wall
 
 59
 Essentially for the reasons stated in some detail in considering whether plaintiffs have stated a constitutional claim against Dickson County, we do not believe that a cause of action has been stated against Sheriff Wall. He also stands in the position of the employer of deputy Fiser and would not be liable under Sec. 1983 on the basis of respondeat superior. He could be liable only for his own personal involvement, if any, in the alleged deprivation of Kathy Nishiyama's constitutional rights. Wall is sued in his official capacity and thus stands in the same posture as the county. Brandon v. Holt, 469 U.S. at 472, 105 S.Ct. at 879.
 
 
 60
 Conceding, as alleged in the complaint, that Sheriff Wall knew and followed a course of conduct that permitted trusty Hartman unsupervised use of county patrol cars, the reasoning of Martinez and Janan (and the cases cited therein) preclude a determination of liability against him. No special relationship was alleged.
 
 
 61
 Plaintiffs raised no allegation of any intended consequence of defendant Wall's actions directed against Kathy Nishiyama in particular. She was not in any way subject to state control, nor in Wall's custody at the time she was murdered. We would therefore affirm the judgment for Sheriff Wall despite giving plaintiffs the full benefit of the allegations of the complaint against him.B. Fiser
 
 
 62
 Unlike the other defendants, Fiser is charged with actually turning over the unsupervised use of the patrol car to Hartman knowing his background and propensity. We must, therefore, assume for purposes of this motion that he intentionally gave over the car to one in his personal custody while acting under color of state law. The intentional act of turning over a highway patrol car to an inmate trusty pursuant to an alleged grossly negligent policy of the sheriff's office does not indicate that any defendant, including Fiser, had any intention nor any malicious attitude towards Nishiyama, who in turn bore no special relationship to any defendant nor to Hartman the offender. Wilson v. Beebe concluded that conduct characterized as "reckless," but which was not intentionally directed towards a victim in custody, was insufficient to establish a constitutional due process claim. 770 F.2d at 586. Courts have historically required deliberate conduct to subject a state actor to a substantive due process claim under Sec. 1983 for deprivation of life. Daniels v. Williams, 106 S.Ct. at 665. The reference in Daniels to Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), and to Murray's Lessee v. Hoboken Land & Improvement Co., 18 How. (59 U.S.) 272 (1856), refers to situations in which law enforcement personnel take direct and deliberate action against a specifically targeted individual resulting in loss of life, liberty, or property. That kind of action is not at issue, even with respect to defendant Fiser, with regard to the claims of a constitutional right to protection from random criminal conduct by one not acting under color of law. There is simply no authority recognizing that a claim of the kind asserted by plaintiffs here represents a cognizable constitutional cause of action,[8] or a Sec. 1983 claim against Fiser despite the egregiously thoughtless character of his action.
 
 
 63
 We would therefore affirm the action of the district court as to all defendants.
 
 
 
 *
 Honorable Leroy J. Contie took senior status on July 1, 1986
 
 
 [1]
 Inmate Hartman has since been found guilty of this murder and sentenced to death in Tennessee state courts. See State of Tennessee v. Hartman, 703 S.W.2d 106 (Tenn.1985), cert. denied, --- U.S. ----, 106 S.Ct. 3306, 92 L.Ed.2d 721 (1986)
 
 
 [2]
 It is claimed, in particular, that Sheriff Wall and his deputy "failed to establish appropriate and reasonable standards and criteria for the determination and designation of a 'trusty' status ... they wrongfully permitted the said HARTMAN to be given a 'trust status'...."
 
 
 [3]
 Plaintiffs alleged that Fiser "with the knowledge, consent and authority" of Wall, "acting in their official capacities," allowed Hartman to drive the car alone
 
 
 [4]
 In Brandon v. Holt, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985), the City of Memphis was held liable for its Police Director's policies in retaining over a lengthy period, without adequate means of review, a police officer characterized as frequently abusive and a "mental case" who injured the persons he took into custody. Brandon, 469 U.S. at 466 n. 4, 105 S.Ct. at 875 n. 4. We perceive a distinction between the circumstances in Brandon and in the actions of the sheriff here and his deputy; the wrongful assailant in Brandon was the police officer himself, acting purportedly as a police officer at the time. Brandon reserved the question whether the injury was caused by the kind of "policy or custom" that "may be fairly said to represent official policy." 469 U.S. at 473 n. 25, 105 S.Ct. at 879, n. 25
 
 
 [5]
 The offender in Martinez was determined to be "in no sense an agent of the parole board." 444 U.S. at 285, 100 S.Ct. at 559. Neither can Hartman be deemed to be the agent of defendants here
 
 
 [6]
 Martinez, citing Baker v. McCollan, 443 U.S. at 140, 99 S.Ct. at 2692, states: "It must be remembered that even if a state decision does deprive an individual of life or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." 444 U.S. at 284 n. 9, 100 S.Ct. at 559 n. 9
 The Eleventh Circuit has also stated:
 The fact that defendants may have violated the duties set out by state law for employees of the Department of Youth Services [by releasing a known dangerous offender with an "extensive criminal and troubled psychiatric history" who shortly thereafter committed rape] does not mean that the defendants deprived plaintiff of her liberty rights without due process of law.
 Jones v. Phyfer, 761 F.2d 642, 647 (11th Cir.1985).
 
 
 [7]
 The specific assertions by plaintiffs in Fox are remarkably similar to those made here:
 Here the particular constitutional infringement complained of is the deprivation of liberty and property rights secured by the fourteenth amendment. In more specific factual terms, the claimants have asserted the right not to be injured in person or property by the irresponsible failure of the state to protect them against any risks of harm posed to them by a state parolee under the direct supervision of the state's agents. In sum, the right asserted is the right to be protected by the state from the possible depredations of a convicted criminal with known dangerous propensities who is under the direct supervision of the state's agents.
 712 F.2d at 87-88. Because the state agent defendants were "unaware that the [claimants] as distinguished from the public at large faced any special danger," the court held that "claimants had no federal constitutional right to be protected by the state from the acts of Mason...." Id. at 88.
 
 
 [8]
 Plaintiffs have asserted no claim of a Fourth Amendment violation on the part of any defendant. Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) is thus not pertinent to the facts of this case