**William CHIPMAN, Administrator of the Estate of Conni Black, Plaintiff**

v.

**CITY OF FLORENCE, et al., Defendants.**

No. 94–cv–062.

United States District Court,
E.D. Kentucky,
at Covington.

Oct. 12, 1994.

Eric C. Deters and Charles H. Deters, Deters, Benzinger & LaVelle, P.S.C., Crestview Hills, KY, for plaintiff.

Hugh O. Skees, Rouse, Skees, Wilson & Dillon, Florence, KY, R. Kent Westberry, Landrum & Shouse; W. Kenneth Nevitt, R. Thaddeus Keal, Williams & Wagoner, Louisville, KY, and Larry J. Crigler, Burlington, KY, for defendants.

BERTELSMAN, Chief Judge:

## I. INTRODUCTION

Plaintiff, the administrator of Conni Black's estate, initiated this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that the defendants, the City of Florence, three Florence police officers and two Boone County sheriff's deputies, deprived Ms. Black of her life without due process of law.

Defendants previously moved to dismiss Plaintiff's complaint. On August 2, 1994, this court issued an opinion and order (doc. # 41) concluding that the individual officers are entitled to qualified immunity and dismissing Plaintiff's claims against the law enforcement officers in their individual capacities. This matter is now before the court for consideration of Plaintiff's motion to reconsider the court's August 2, 1994 opinion and order (doc. # 42) and Plaintiff's motion for leave to file an amended complaint (doc. # 43). Defendants have responded (docs. # 47, 48), and Plaintiff filed a reply in support of its motion for leave to amend (doc. # 49).

## II. FACTUAL BACKGROUND [1]

In the early morning hours of February 20, 1994, the decedent, Conni Black, was involved in an altercation with her boyfriend, Steve Kritis, at a bar in Florence, Kentucky. Mr. Kritis struck Ms. Black twice and threatened to kill Ms. Black and her friend, Susan Stemler.

In an attempt to escape from Mr. Kritis' abuse, Ms. Stemler and Ms. Black left the bar and fled in Ms. Stemler's automobile. Mr. Kritis followed the women in his truck. After a brief chase, Mr. Kritis cornered the automobile driven by Ms. Stemler in a driveway at the end of a dead end street. Mr. Kritis parked his truck in such a way as to block the path of Ms. Stemler's car. Mr. Kritis then approached the women's car

shouting threats of violence. Ms. Stemler sounded her horn in an attempt to obtain assistance. The owner of a nearby house heard the commotion and immediately called the police.

Before the police could respond, Ms. Stemler maneuvered her vehicle through a lawn and onto the street beyond Mr. Kritis' vehicle. Mr. Kritis returned to his truck and resumed the chase. The owner of the house and another witness joined the chase in an effort to protect Ms. Stemler and Ms. Black.

Shortly after the chase resumed, Ms. Stemler attracted the attention of a Florence police officer. Ms. Stemler ran to the officer and asked him to protect the women from Mr. Kritis, who had stopped his vehicle at a traffic light behind Ms. Stemler's automobile. Shortly thereafter, four other law enforcement officers arrived.

Both Steve Kritis and Susan Stemler smelled of alcohol. Ms. Black was so intoxicated that she was unable to remove her seatbelt or to walk without assistance.

Mr. Kritis told the officers that Ms. Black was his girlfriend and that Ms. Stemler was a lesbian who was trying to "steal" his girlfriend. Ms. Stemler and another witness related to the officers the events that had occurred that night.

The officers administered a field sobriety test to Susan Stemler. Although Ms. Stemler passed the field sobriety test, the officers arrested her for driving under the influence of alcohol. Ms. Black was given the choice of leaving the scene with Mr. Kritis or being placed under arrest. Ms. Black chose to accompany Mr. Kritis.

Two officers assisted Ms. Black out of Ms. Stemler's automobile and into Mr. Kritis' truck. Less than five minutes later, Mr. Kritis crashed his truck, killing Ms. Black. Tests revealed that Mr. Kritis' blood alcohol level exceeded .20, more than twice the legal

---

1. Because this matter is before the court on a motion to reconsider the court's earlier ruling concerning motions to dismiss, the court must accept as true the allegations contained in Plaintiff's amended complaint. As the court has concluded that justice would be served by permitting Plaintiff to amend his complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, the allegations contained in Plaintiff's amended complaint will also be accepted as true for purposes of rendering this opinion, and all reasonable inferences will be drawn in favor of the plaintiff.

limit. Ms. Black's blood alcohol level was reported as .237.

On May 20, 1994, Mr. Kritis was indicted for second degree manslaughter in the death of Conni Black. He was also indicted for felonious wanton endangerment as to Susan Stemler.

Plaintiff initiated this action against the City of Florence and the five law enforcement officers present at the scene, pursuant to 42 U.S.C. § 1983. The defendant law enforcement officers moved to dismiss Plaintiff's complaint on the basis that they are entitled to qualified immunity. Defendant City of Florence moved to dismiss Plaintiff's complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

After reviewing the parties' briefs and conducting oral argument, this court concluded that the defendant law enforcement officers had not violated clearly established law and were, therefore, entitled to qualified immunity. The court issued an opinion and order dismissing all claims against the defendant law enforcement officers in their individual capacities and denying without prejudice the City's motion to dismiss (doc. # 41). Plaintiff now seeks reconsideration of that opinion and order.

### III. ANALYSIS

■ Government officials, including police officers, "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Black v. Parke,* 4 F.3d 442, 444 (6th Cir.1993) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)); *see also O'Brien v. Grand Rapids,* 23 F.3d 990 (6th Cir.1994). A constitutional right is "clearly established" if the law is "clear in regard to the officials' particular actions in the particular situation." *Black,* 4 F.3d at 445 (quoting *Long v. Norris,* 929 F.2d 1111, 1114 (6th Cir.1991)). That is, "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting

*Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). Therefore, the official will be immune if officers of reasonable competence could disagree concerning whether specific conduct violates a plaintiff's rights. *Caldwell v. Moore,* 968 F.2d 595, 599 (6th Cir.1992).

In its August 2, 1994 opinion and order, this court concluded that, while an abstract right to substantive due process has been clearly established, the law concerning a public official's obligations in protecting an individual from private violence is not clearly established. Doc. # 41 at 4–5. In reaching its conclusion, the court examined the holdings in *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (state's failure to protect child from beating administered by known child abuser does not state a violation of the Due Process Clause) and *Walton v. City of Southfield,* 995 F.2d 1331 (6th Cir.1993) (officers who abandoned minor passengers at time of driver's arrest entitled to qualified immunity).

■ Relying extensively on the Sixth Circuit's opinion in *Nishiyama v. Dickson County,* 814 F.2d 277 (6th Cir.1987), Plaintiff once again contends that the law is clearly established that "police officers who actively facilitate indirect harm are subject to § 1983 liability." *See* doc. # 42 at 3 and 5. However, the Sixth Circuit's recent opinion in *Lewellen v. Metropolitan Government,* 34 F.3d 345 (1994) (available at 1994 WL 459270) specifically rejects *Nishiyama* and confirms this court's conclusion that the contours of an individual's right to be free from state facilitation of indirect harm are not clearly established.

In *Lewellen,* Bobby Lewellen was severely electrocuted while assisting in the construction of a new school building. The architect's plans for the new building specified that a 23,900–volt power line used to supply electricity to the existing school was to be moved during the course of construction. Relocation of the power line would require an interruption of electrical service to the existing middle school for six to eight hours. The school board was unwilling to allow power to

be shut off while school was in session, and the school board, the contractor and the electrical subcontractor all refused to pay the $600 to $1000 in overtime required to move the power line on a weekend or holiday. The parties, therefore, agreed to move the power line on a week day during Christmas vacation to avoid incurring overtime charges.

Construction of the new building continued through the summer and fall of 1988. When the framework of the new building was completed in mid-December, the top of the building came within seven feet of the live power line. On December 19, 1988, Mr. Lewellen was working on the roof of the new building. He sustained serious injuries when a piece of steel bridging he was carrying came into contact with the 23,900–volt power line. Mr. Lewellen brought an action against the city and the board of education, pursuant to 42 U.S.C. § 1983, alleging that those defendants violated his substantive due process rights by depriving him of a liberty interest without due process of law.

In affirming the District Court's entry of summary judgment in favor of the defendants, the Sixth Circuit specifically rejected the approach taken in *Nishiyama*, the case upon which Plaintiff in this case relies to "clearly establish" Ms. Black's substantive due process rights. *Lewellen*, 34 F.3d at 350. In addition, the Court reviewed the various conflicting standards applied to substantive due process cases in the last several years where public actions led to non-intentional private injury. *Lewellen*, at 349–52 (comparing and contrasting the standards applied in *Collins v. Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), *Nobles v. Brown*, 985 F.2d 235 (6th Cir.1992) and *Nishiyama v. Dickson County*, 814 F.2d 277 (6th Cir.1987)); *see also Leffall v. Dallas Independent School District*, 28 F.3d 521 (5th Cir.1994) and *Pinder v. Johnson*, 33 F.3d 368 (4th Cir.1994).

After comparing various substantive due process cases and reviewing the Supreme Court's traditional approach to the Due Process Clause, the Sixth Circuit concluded:

The Supreme Court has repeatedly declared its unwillingness to "make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States." ... What *seems* to be required is an intentional infliction of injury ... or some other governmental action that is "arbitrary in the constitutional sense."

*Lewellen*, 34 F.3d at 351 (citations omitted) (emphasis added). In this case, Plaintiff claims that Defendants "demonstrated deliberate indifference to the constitutional rights of Conni Black, and they affirmatively facilitated the criminal and grossly negligent conduct of Steve Kritis, rendering them personally liable to Plaintiff under 42 U.S.[C.] § 1983." Amended Complaint, tendered September 7, 1994, para. 40.

In its previous opinion, the court examined the relevant case law concerning governmental facilitation of private torts and concluded that the law in that area is not clearly established. *See* doc. # 41. The Sixth Circuit's recent decision in *Lewellen v. Metropolitan Government* substantiates the court's conclusion. Indeed, the Sixth Circuit's effort to enunciate what *"seems* to be required" indicates that the contours of a person's right to be free from state facilitation of indirect harm are unclear even to the judiciary. Not only is the constitutional duty to one not in custody unclear, but the "deliberate indifference" and "gross negligence" standards generally have been cast in doubt as well. *Id.* at 351. The *Lewellen* Court even went so far as to state, "Gross negligence is not actionable under § 1983, because it is not 'arbitrary in the constitutional sense.'" *Id.* at 351 (citing *Collins v. City of Harker Heights*, 503 U.S. 115, ——, 112 S.Ct. 1061, 1071, 117 L.Ed.2d 261 (1992)).

As the constitutional rights which the defendant law enforcement officers allegedly violated in this case are not clearly established, those defendants are entitled to qualified immunity.

Therefore, the court being advised,

**IT IS ORDERED** that:

1. Plaintiff's motion to amend his complaint (doc. # 43) is granted; and

2. Plaintiff's motion for reconsideration of the court's August 2, 1994 opinion and order (doc. # 42) is denied.