47 F.3d 1168
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Sheila Yarbro GARRETT, et al., Plaintiffs-Appellees,
v.
A.C. GILLESS, et al., Defendants-Appellants.
 No. 93-6197.
 United States Court of Appeals, Sixth Circuit.
 Jan. 17, 1995.
 
 On Appeal from the United States District Court for the Western District of Tennessee, No. 90-02679; Robert M. McRae, Jr., Judge.
 W.D. Tenn.
 REVERSED.
 Before: KEITH, KENNEDY and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants appeal from the entry of judgment against them in this 42 U.S.C. Sec. 1983 action arising out of the alleged failure of defendants Shelby County and the Shelby County Sheriff Department to provide police protection to a victim of domestic violence and her children. The majority concludes that no constitutional violation occurred, and therefore REVERSE the judgment entered against defendants.
 
 I.
 
 2
 The relevant facts adduced at trial are presented below. Sheila Yarbro Garrett ("Mrs. Garrett" or "Sheila") and Clyde Garrett ("Garrett") were married in 1984. In 1987, Garrett underwent training and was commissioned as a deputy sheriff by the Shelby County Sheriff. Towards the end of their marriage, the Garretts experienced marital difficulties, and Garrett became increasingly violent. In July 1989, Sheila filed for divorce and obtained a restraining order against Garrett. She retained custody of their daughter, Nikki, as well as her two sons from a prior marriage. After their separation in 1989, Garrett made repeated threats to kill his wife and their daughter. Sheila reported several incidents of abuse to the police. In each case, an Internal Affairs Bureau (IAB) investigation file was opened, but the IAB was not able to pursue an investigation because Sheila declined to file charges against Garrett. On February 11, 1990, Garrett went to the family's residence. He entered the house with guns in both hands, one of which was the service revolver issued by the Sheriff Department. He shot Sheila in the face, and her son Donald in the neck before killing his daughter and himself. Sheila and her son Donald sought damages for violations of their federal constitutional rights pursuant to Sec. 1983 claiming that defendants violated plaintiffs' due process rights and their right to equal protection under the law.[1]
 
 II.
 
 3
 Plaintiffs begin their constitutional argument with the faulty assumption that law enforcement officers have a constitutional duty to protect private citizens from acts of violence committed by other private citizens. As noted by the Supreme Court, because the Constitution is a charter of negative liberties, it does not impose an affirmative obligation on the federal government or a state to provide certain minimal levels of safety and security, absent a special relationship between the private citizen and the government. DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 195-97 (1989). Rather, the Due Process Clause simply forbids the government from depriving individuals of life, liberty, or property without due process of law. Id.
 
 
 4
 The Supreme Court's decision in DeShaney, supra, controls the outcome of this action. The Court stated that "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitations which it has imposed on his freedom to act on his own behalf .... through imprisonment, institutionalization, or other similar restraint of personal liberty ...." Id. at 200 (internal citations omitted). Thus, even in situations where the defendant may be aware of danger to an individual, as in the case before us, the defendant is under no constitutional duty to protect the individual absent the special relationship; "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Id. at 197. As DeShaney establishes, defendants' mere awareness of potential danger to plaintiffs, without more, is not sufficient to create a constitutional duty.
 
 
 5
 Plaintiffs' reliance on Nishiyama v. Dickson County, 814 F.2d 277 (6th Cir. 1987) is misplaced. The crucial distinction in Nishiyama was that the perpetrator, a state prisoner, was furnished with a sheriff's police car to run errands. Thus, the defendants in Nishiyama took affirmative action to provide the perpetrator with the opportunity and the freedom to commit the crime. Here, by contrast, Garrett was not authorized to use the police truck for personal business, and furthermore, had other modes of transportation to get to Mrs. Garrett's house. We are not persuaded by plaintiffs' attempt to circumvent DeShaney by arguing that a special relationship somehow existed because the Department furnished the "weapon of destruction," the truck Garrett drove on February 11, 1990, and adopted a policy permitting drunken off-duty officers to carry their firearms.
 
 
 6
 Here, there simply was no showing that defendants' inaction was a proximate cause of plaintiffs' injuries, especially in light of the fact that Garrett had two guns with him at the house, not just the gun issued by the sheriff. Even if defendants had confiscated the weapon they issued, Garrett still possessed a gun and thus still could have acted. Further, Ms. Garrett was not at any time in the custody or control of defendants. Thus, there is nothing in the record to establish a special relationship between defendants and Ms. Garrett, and therefore no constitutional duty can be imposed on defendants. Therefore, we hold that because defendants were not under a duty to act, their "inaction" did not constitute a constitutional violation.
 
 
 7
 Plaintiffs' claim that defendants' alleged custom or policy to treat victims of domestic violence less seriously than other crime victims also fails. Plaintiffs first must establish an affirmative constitutional duty has been imposed on the defendants. The custom or policy does not create this constitutional duty; its relevance is in proving, once a duty is established, that a state's action or inaction was grossly negligent or deliberately indifferent to the plaintiffs' constitutional rights. Liability attaches only if a plaintiff can establish that her injuries were the result of an unconstitutional policy or custom. See Oklahoma City v. Tuttle, 471 U.S. 808, 817, reh'g denied, 473 U.S. 925 (1985); Monell v. Department of Social Servs., 436 U.S. 658, 691 (1978). As discussed above, defendants were not under a constitutional duty to protect plaintiffs from violent acts committed by a private actor. In addition, we cannot conclude, based on the record before us, that defendants had a policy to permit off-duty officers to carry weapons to commit spousal abuse and other acts of violence. At best, defendants' policy allowing off-duty officers to carry their weapons amounts to negligence, which is insufficient to impose liability. See, e.g., Lewellen v. Metropolitan Gov't of Nashville, 34 F.3d 345 (6th Cir.), reh'g en banc, denied, 1994 U.S. App. Lexis 28696 (6th Cir. Oct. 12, 1994). The district court therefore erred in allowing this issue to reach the jury.
 
 III.
 
 8
 For the reasons provided above, the majority finds that defendants did not violate plaintiffs' constitutional rights and therefore REVERSE AND REMAND with instructions to dismiss the case. Because no constitutional violation exists, it is not necessary to address the other issues defendants raise on appeal.
 
 
 9
 Circuit Judge KEITH would dissent from the view presented above.
 
 
 10
 Damon J. KEITH, Circuit Judge, dissenting.
 
 
 11
 I disagree with the majority opinion that Nishiyama is not controlling. See Nishiyama v. Dickson County, 814 F.2d 277 (6th Cir. 1987). The majority finds a "crucial" distinction between Nishiyama and the case at bar. Slop op. at . In Nishiyama, the perpetrator, a state prisoner, was furnished with a sheriff's patrol car to run errands, and used that patrol car while murdering Kathy Nishiyama. The majority contrasts the Nishiyama scenario with what took place in the instant case. The Sheriff's Department furnished Garrett with a police truck and a revolver, and, though not authorized to do so, he used the vehicle and his service revolver to murder his daughter and critically wound his wife and stepson. I fail to see the difference.
 
 
 12
 In Nishiyama, this Court held the defendants liable because they were recklessly indifferent by continuing to allow prison trusties the use of patrol cars to run errands, even after the defendants had been informed some trusties had criminally abused this privilege. Id. at 281. Garrett's superiors likewise had been notified on several occasions that he had threatened to kill his wife; broke into her home; shot out her automobile window; and, flattened her tires, all while in possession of his service revolver and police truck.
 
 
 13
 The majority's distinction between this case and Nishiyama appears to turn on whether the actor received affirmative assistance from the defendants in order to commit the underlying offense. The majority opinion distinguishes Nishiyama on the basis that the defendants there "took affirmative action to provide the perpetrator with the opportunity and the freedom to commit the crime," slip op. at , therefore liability attaches to defendants. In the case at bar, however, the majority concludes Garrett did not receive affirmative assistance from the defendants, therefore no liability attaches. Slip op. at .
 
 
 14
 The problem I have with the majority opinion's analysis is that the majority is manufacturing a factual distinction between the two cases which does not exist. The trustie in Nishiyama received the instrument of death, the patrol car, from the defendants. Garrett received his instruments of death, the police truck and his service revolver, from the defendants. In Nishiyama, the defendants were on notice that the trusties were abusing their use of the police vehicles and they continued to allow the trusties use of the police vehicles. Similarly, the defendants in the instant case were on notice that Garrett was becoming increasingly more violent toward his wife. This Court found in Nishiyama that the defendants acted with "reckless indifference" by failing to stop the practice of providing trusties with access to patrol cars in the face of abuse. Nishiyama, 814 F.2d at 282-83. The defendants in this case were no less reckless in their failure to remove the instruments of death from Garrett, after they had been repeatedly notified of Garrett's threatening conduct toward his wife: breaking into her home; flattening her car tires; shooting out her automobile windows; and threatening to kill her.
 
 
 15
 For the foregoing reasons, I respectfully dissent.
 
 
 
 [1]
 Sheila also sought an award on behalf of her deceased daughter