836 F.2d 1347
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Steve ASMAR; Ron Asmar; and Metro Institutional Food
Services, Inc., a Michigan corporation, jointly
and severally, Plaintiffs-Appellants,
v.
DETROIT NEWS, INC. (The Gannett Newspapers, Inc.), a
Michigan corporation; Storer Communications, Inc. d/b/a
Channel 2; FCI 5, Inc., a foreign corporation a/b/a
WJBK-TV; Detroit Free Press, Inc., a Michigan corporation
(Knight Ridder Newspaper Sales, Inc.); Capital Cities/ABC,
Inc., a foreign corporation d/b/a WJR Radio; Channel 7 of
Detroit, Inc., a Michigan corporation d/b/a WXYZ-TV;
Post-Newsweek Stations, Michigan, Inc., Defendants-Appellees (87-1037),
George M. Maurer, Jr. d/b/a Maurer & Kalls; Kenneth W.
Kalls d/b/a Maurer & Kalls; Jo-Dan Ltd., Inc.;
and Joe E. McLemore,
Defendants-Appellees (87-1150).
 Nos. 1037, 87-1150.
 United States Court of Appeals, Sixth Circuit.
 Jan. 13, 1988.
 
 Before BOYCE F. MARTIN, Jr., MILBURN and ALAN E. NORRIS, Circuit Judges.
 MILBURN, Circuit Judge.
 
 
 1
 In this consolidated appeal, plaintiffs-appellants Steve Asmar, Ron Asmar, and Metro Institutional Food Services ("MIFS") appeal the district court's orders in this wiretapping action dismissing their complaint. For the reasons that follow, we reverse and remand for further proceedings.
 
 I.
 
 2
 On August 13, 1986, plaintiffs filed their action in the district court alleging that defendants Detroit News, Inc.; FCI 5, Inc.; Detroit Free Press, Inc.; Capital Cities/ABC, Inc.; Channel 7 of Detroit, Inc.; Post-Newsweek Stations, Michigan, Inc.; and Storer Communications, Inc.; ("media defendants") and George M. Maurer, Jr.; Kenneth W. Kalls; Jo-Dan Ltd., Inc.; and Joe E. McLemore ("nonmedia defendants") were jointly and severally liable to plaintiffs pursuant to the federal wiretap statute, 18 U.S.C. Secs. 2510-20,[1] and the Michigan eavesdropping statute, M.C.L.A. Secs. 750.539a-i.
 
 
 3
 Because this case is before us on appeal of a motion to dismiss, we look to the pleadings for the facts in this case. Plaintiffs Steve and Ron Asmar are the principals in MIFS, a corporation engaged in the wholesale delivery of food and beverages to school systems in the Detroit area for distribution to school children. Defendant-appellee Jo-Dan, Ltd., Inc. ("Jo-Dan"), is a direct competitor with MIFS for the supplying of food and beverage services to the Detroit public schools.
 
 
 4
 The Detroit Board of Education has an equal opportunity policy which is institutionalized in an Equal Opportunity Office headed by Ferd Hall. Hall was appointed by the Detroit Board of Education which was chaired by its President, Harold Murdock. Hall and his staff would investigate all contract bidders to determine whether they had acceptable equal opportunity policies. If Hall's office determined that a contract bidder's employment policies were inadequate from an equal opportunity standpoint, then that bidder would be declared "nonawardable" and could not contract with the Detroit Board of Education.
 
 
 5
 This dispute originated when Jo-Dan was declared "nonawardable" by Hall's office. Jo-Dan was unsuccessful in varied attempts to have its status altered. On Friday, May 9, 1986, defendant McLemore, President of Jo-Dan, received an anonymous letter and cassette tape through the mail. The letter advised McLemore that the cassette tape would be of interest to him in his troubles with the Detroit Board of Education. McLemore took the tape to his attorney, defendant Maurer, and together they listened to the tape.
 
 
 6
 The tape allegedly depicts an ongoing bribery scheme involving MIFS, through its President, Steve Asmar, Harold Murdock, and Ferd Hall. The tape purports to indicate that Asmar was paying thousands of dollars to Hall and Murdock, who, in return, were fixing the contract procurement policies of the Board of Education in favor of MIFS.
 
 
 7
 McLemore and Maurer called the media defendants to a "press conference" five days later, May 14, 1986. At that "press conference," McLemore claimed his company lost its contract to supply milk to the Detroit schools because of the apparent bribery scheme involving Asmar, Hall, and Murdock. McLemore then played the tape to back up his allegations. McLemore gave copies of the tape to the media defendants, who played portions of it on their news broadcasts or published excerpts in their newspapers. McLemore also made several copies of the tape, which he either sold or gave away, and McLemore and Maurer provided copies of the tape to the Detroit Board of Education. Plaintiffs' complaint, as amended and liberally interpreted, alleges that prior to the "news conference," the media defendants also received either correspondence or telephone calls from the person or persons who surreptitiously intercepted the telephone conversations, and that the media defendants were aware of the fact that the tape in question was obtained from an illegal wiretap.
 
 
 8
 As earlier stated, plaintiffs then filed their wiretapping action on August 13, 1986. Following a status conference, plaintiffs filed a first amended complaint on August 26, 1986. Subsequently, the media defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The nonmedia defendants also filed a motion to dismiss pursuant to Rules 12(c) and 56(b) of the Federal Rules of Civil Procedure. Thereafter, the plaintiffs filed a second amended complaint for the purpose of clarifying the identity of one of the corporate defendants. All the allegations contained in the first amended complaint were incorporated therein.
 
 
 9
 A hearing was held on October 16, 1986. As the nonmedia defendants failed to appear, the district court limited the hearing to the media defendants' motion to dismiss. After oral argument, the district court granted the media defendants' motion and set forth its reasons on the record. On October 23, 1986, the district court entered its Order of Dismissal as to the media defendants.
 
 
 10
 On November 5, 1986, plaintiffs filed what was styled as a Motion for Relief from the Order of Dismissal. On December 16, 1986, the district court, construing the motion as one for reconsideration, issued a Memorandum and Order denying the motion. The district court's order was certified as final and appealable under Rule 54(b) of the Federal Rules of Civil Procedure even though the nonmedia defendants remained in the case. Plaintiffs filed a timely notice of appeal with this court.
 
 
 11
 On January 28, 1987, forty-three days after the entry of the order dismissing the media defendants, the trial court entered an order dismissing the action against all remaining defendants pursuant to either Rule 12(c), Rule 56 or Rule 12(b)(6) of the Federal Rules of Civil Procedure. A timely notice of appeal was filed with this court, and the two appeals have been consolidated.
 
 II.
 A. Media Defendants
 
 12
 In granting their Rule 12(b)(6) motion to dismiss, the district court found several pleading deficiencies in the plaintiffs' complaint regarding the media defendants. In construing the plaintiffs' complaint liberally, as we must, we hold that the complaint sets out a cause of action under both the federal and Michigan wiretap statutes.[2] In this connection, we have noted that the district court did not address the issue of whether or not the plaintiffs stated a cause of action under the Michigan wiretap statute.
 
 
 13
 A complaint can be properly dismissed under 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir.1987); Nishiyama v. Dickson County, Tennessee, 814 F.2d 277, 279 (6th Cir.1987) (en banc). As we recently held, "[t]he basic requirements for a pleading are set forth in Rule 8(a) and call for 'a short and plain statement of the claim showing that the pleader is entitled to relief....' " Nishiyama, 814 F.2d at 279 (quoting Fed.R.Civ.P. 8(a)). "In reviewing a dismissal on the pleadings all allegations in the complaint are taken as true and the complaint is construed liberally in favor of the party opposing the motion to dismiss." Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir.1976). "A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant.... All a complaint need do is afford the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " Id. (quoting Conley, 355 U.S. at 47).
 
 
 14
 Under Rule 8(a), a party is not required to specifically plead the factual support for all of his allegations, but only to provide notice to his adversary of the nature of his claim. As a commentary on the Federal Rules suggests:
 
 
 15
 The evidentiary material supporting these general statements normally should not be set out in the pleadings but rather should be left to be brought to light during the discovery process. For example, in a suit alleging liability for the act of an agent it is sufficient simply to assert the existence of an agency relationship without setting forth the contract of agency or details about the relationship in the pleadings, inasmuch as the terms of the agency are evidentiary in nature.
 
 
 16
 5 C. Wright and A. Miller, Federal Practice & Procedure Sec. 1281, at 363-64 (1969) (footnotes omitted).
 
 
 17
 In the present case, the plaintiffs specifically cite the statute in the complaint in several instances. They specifically claim that the media defendants wrongfully played the tapes, wrongfully used the tapes, and wrongfully disseminated the information contained on the tapes, all in violation of both the federal and state wiretapping statutes. Any defendant would clearly know the basis of the plaintiffs' claim. Therefore, the district court erred in requiring the plaintiffs to specifically allege willfulness and knowledge, as both are implicitly contained in an allegation of "wrongful" use and dissemination. Moreover, as content of the intercepted conversation is irrelevant to liability, the specific conversation illegally intercepted or disseminated need not be set out.
 
 
 18
 Finally, the media contends that the district court properly held that the information in this case became part of the public domain prior to dissemination. We agree that dissemination of information already "common knowledge" or in the public domain creates no liability. However, the plaintiffs have alleged that the media was made aware of the fact that the tape was illegally obtained prior to the "press conference." Although aware of that allegation, the district court took judicial notice of "common knowledge" and held that the material had become common knowledge by the time it was disseminated by the medial defendants. The court's judicially noticed definition is not, however, set out in the record.
 
 
 19
 Whether something has become "common knowledge" and in the public domain is not properly the subject of a 12(b)(6) motion to dismiss. It is a factual determination to be made by the trier of fact, not by a district court in ruling on the adequacy of a complaint. Specifically, if the parties to the press conference knew or should have known that the material in question was illegally obtained, then their participation in a "press conference" or other public dissemination does not, as a matter of law, relieve them of liability for later disseminations.
 
 B. Nonmedia Defendants
 
 20
 The district court is unclear in its order dismissing the nonmedia defendants as to whether the dismissal is pursuant to Rule 12(c), Rule 56, or Rule 12(b)(6). Since the pleadings had not formally closed,[3] judgment was not entered,[4] and no notice was provided by the court that it was treating the motion as one for summary judgment,[5] we will treat the district court's action as granting a Rule 12(b)(6) motion to dismiss.
 
 
 21
 The district court cited three reasons for dismissing the complaint: (1) even though plaintiffs alleged that the tape was wrongfully made, wrongfully obtained, and wrongfully used and disseminated, they failed to allege that the defendants knew or had reason to know that the tape was obtained in violation of the statute; (2) it is possible that one of the parties consented to the recording of the conversation; and (3) the nonmedia defendants submitted an "affidavit" describing how they received the tape, and the "affidavit" gave no reason to believe that they knew the tape was made in violation of the statute.
 
 
 22
 As we previously noted, the initial ground upon which the district court dismissed plaintiffs' complaint was erroneous. The second ground is erroneous as well. A district court, in construing a complaint for the purpose of a 12(b)(6) motion, must examine the complaint to see if the plaintiff can prove any possible set of facts which would entitle him to relief. Conley, 355 U.S. at 45-46. In this case, the district court did the apposite. It examined the record for any possible situation wherein the plaintiffs would not be entitled to relief, found such a situation, and then dismissed the complaint. Such is clearly erroneous.
 
 
 23
 Undoubtedly, a district court could examine every complaint filed and find some set of facts under which the plaintiff would not be entitled to relief. In this case, the district court speculated that it was possible that someone could have claimed to have been Ferd Hall, that this person purporting to be Ferd Hall could have given consent, and such consent would destroy any cause of action. However, even if the facts as speculated by the district court did occur, the court could not properly dismiss the complaint. While a party can escape liability under the federal wiretapping statute for consenting to the wiretap, such consent is inadequate if the person consenting intercepted the communication for a criminal, tortious, or other injurious act or purpose. 18 U.S.C. Sec. 2511(2)(d). In Boddie v. American Broadcasting Cos., 731 F.2d 333 (6th Cir.1984), we held that it is a jury question as to whether or not such consent acted to preclude liability, and a district court cannot dismiss the complaint upon finding consent. Id. at 338. Therefore, the district court erroneously dismissed the complaint even if its improper speculation was correct.
 
 
 24
 The court's third basis for dismissing the nonmedia defendants is also erroneous. We initially note that a trial court cannot rely on an affidavit for a Rule 12(b)(6) dismissal. In this case, however, the "affidavit" was simply a sworn pleading. In their motion for dismissal, the defendants set out their explanation of how they came into possession of the tape and their assertions that they did not know or should have known that the taped conversation was illegally obtained. The district court erroneously relied on that pleading to dismiss the complaint, as a paper denial contained in a motion to dismiss cannot form the basis for a 12(b)(6) dismissal. What the nonmedia defendants knew or should have known depends upon a wide variety of factors that would be adduced during the discovery process and/or introduced at trial. The defendants' knowledge and willfulness is a question for the jury, not a question to be resolved by the trial court pursuant to a Rule 12(b)(6) motion.
 
 III.
 
 25
 For the foregoing reasons, we REVERSE the orders of the district court and REMAND for further proceedings. It should be noted, however, that our holding in this case is limited solely to the district court's dismissal of the plaintiffs' action under Federal Rule of Civil Procedure 12(b)(6). In so holding, we intimate no opinion as to the merits of the plaintiffs' claims or the eventual outcome of this case.
 
 
 
 [1]
 18 U.S.C. Sec. 2511 provides:
 (1) Except as otherwise specifically provided in this chapter any person who
 * * *
 (c) willfully discloses, or endeavors to disclose, to any other person the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection; or
 (d) willfully uses, or endeavors to use, the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection;
 shall be fined not more than $10,000 or imprisoned not more than five years, or both.
 * * *
 18 U.S.C. Sec. 2520 provides:
 Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications ...
 
 
 [2]
 M.C.L.A. Sec. 750.539h provides:
 Any parties to any conversation upon which eavesdropping is practiced contrary to this act shall be entitled to the following remedies:
 (a) An injunction by a court of record prohibiting further eavesdropping.
 (b) All actual damages against the person who eavesdrops.
 (c) Punitive damages as determined by the court or by a jury....
 
 
 [3]
 A Rule 12(c) motion is proper only "[a]fter the pleadings are closed." Fed.R.Civ.P. 12(c)
 
 
 [4]
 A motion under Rule 12(c) or Rule 56 is a determination of the substantive merits of the controversy in which the court enters judgment. See 5 C. Wright and A. Miller, Federal Practice & Procedure Sec. 1369, at 700 (1969)
 
 
 [5]
 If "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment ... and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b)