732 F.Supp. 572 (1989)
Howard LEE, et al., Plaintiffs,
v.
GATEWAY INSTITUTE & CLINIC, INC., et al., Defendants.
Civ. A. No. 89-76J.
United States District Court, W.D. Pennsylvania.
November 27, 1989.
*573 Mark Gordon, Pittsburgh, Pa., for plaintiffs.
John L. McIntyre, Hollidaysburg, Pa., for defendant Dubois Regional Medical Center.
John W. Jordan, Pittsburgh, Pa., for defendant John Allen, M.D.
Stephen M. Houghton, Pittsburgh, Pa., for defendant Pamela DiGilarmo.
George M. Evan, Pittsburgh, Pa., for defendants Gateway Institute, McClure, Navarro, Clearfield and Jefferson Mental Health Center.
Donald W. Bebenek, Pittsburgh, Pa., for defendants Chen and Fugate.

*574 MEMORANDUM ORDER
D. BROOKS SMITH, District Judge.
Before the Court are defendants' motions to dismiss plaintiffs' complaint for want of subject-matter jurisdiction and for failure to state a claim. They require us to survey the state of the law under the Civil Rights Act of 1871, 42 U.S.C. § 1983, applied to claims for deprivation of life without due process under the Fourteenth Amendment.

I.
This matter arises from the tragic death of plaintiffs' decedent, Donald M. Lee. The complaint, which we accept as undisputed for purposes of the motions to dismiss, alleges that Donald Lee was intentionally killed on April 21, 1987, by defendant Frederick E. Wommer. Wommer, a paranoid schizophrenic with known propensities for violent behavior, intoxication, and the collection of martial arts paraphernalia, stabbed Lee to death with a six inch "ninjabutterfly" knife in a Clearfield, Pennsylvania, department store. There was no motive for the attack; Wommer simply had encountered Lee, a complete stranger, in the store into which he had wandered after signing himself out of a local mental health center.
Wommer was a resident of defendant Gateway Institute & Clinic's personal care boarding home, the Gateway Comprehensive Care Center, in Clearfield. Gateway Institute operated the only supervised residency program for mentally ill patients receiving treatment at the defendant Clearfield-Jefferson Community Mental Health Center ("CMHC"). While at the Gateway Comprehensive Care Center, Wommer was under the control of and in the custody of defendant Pamela DiGilarmo, R.N., who managed the Center. Wommer received outpatient mental health treatment and assessment from defendant Raymond Navarro, a psychologist on the staff of CMHC, and from two psychiatrists, defendants, William Chen, M.D., and James Fugate, M.D. Doctor Fugate was the medical director of both Gateway and CMHC, and a member of the staff of defendant DuBois Regional Medical Center. Defendant Rex McClure was the managing director of both Gateway and CMHC.
Approximately one month before the murder, from February 24, 1987, through March 21, 1987, Wommer had been hospitalized at DuBois Regional Medical Center, where he was treated by defendant Fugate and defendant John E. Allen, M.D., a physician at DuBois. Wommer's behavior was violent, irrational, and hostile to others. He experienced command delusions which told him to hurt himself or others, and he attacked and threatened therapists and other patients. Despite objective evidence from these episodes and from a prior outpatient facility that Wommer should not be released, defendants DuBois, Allen, and Fugate deliberately discharged him to reside at Gateway while seeking outpatient treatment of CMHC.
Wommer was discharged allegedly because defendants DuBois, Allen and Fugate had a dual financial interest in "dumping" patients into a less intensive treatment facility, which served to reduce costs to DuBois and to increase revenues for Gateway and CMHC. Generally, plaintiffs allege that the Pennsylvania Mental Health Procedures Act, 50 P.S. § 7101, et seq., as it is implemented in the Commonwealth, leads to the delegation of authority for administering Pennsylvania's public mental health care system to counties which contract with private entities, such as defendants, to provide necessary care. Because the counties also bear the cost of reimbursing patient costs for both private entities and the more intensive state facilities (the maximum security facility at Farview, and the medium security facility at Mayview, for instance) there is an incentive to downgrade a patient's treatment regardless of what sound medical judgment dictates. The plaintiffs allege this occurs sufficiently often to rise to the level of custom, or sufficiently deliberately to rise to the level of policy for defendants in the mental health system. It was defendants' actions taken pursuant to this policy, plaintiffs allege, which proximately caused Wommer's placement in a facility from which he could, *575 despite the known and disregarded danger he threatened, simply walk away, and murder Donald Lee. Plaintiffs also allege that this repeated dumping to less intensive facilities virtually guaranteed the deterioration of Wommer's state.[1]

II.
Section 1983 does not create a cause of action of itself; it provides redress for certain violations of rights arising under the federal constitution or laws of the United States which are caused by persons acting under color of state law. Baker v. McCollan, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). It is not a tort statute, see Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), although tort principles may be relevant to its application. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 258, 101 S.Ct. 2748, 2755, 69 L.Ed.2d 616 (1981); Carey v. Piphus, 435 U.S. 247, 257-59, 98 S.Ct. 1042, 1049-50, 55 L.Ed.2d 252 (1978). The first inquiry, therefore, is whether plaintiffs have been deprived of a right secured by the constitution or laws of the United States. DeShaney v. Winnebago County Department of Social Services, 489 U.S. ___, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). We must then examine whether plaintiffs have alleged that the deprivation was caused by a person acting under color of state law, Blum v. Yaretsky, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), or in the case of a municipality or political subdivision, pursuant to an established policy or custom of that body. Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Finally, the unconstitutional action taken under color of law must effectively be the cause of the deprivation of the rights of plaintiffs. Martinez v. California, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980).
Where, as here, the plaintiffs are claiming that the actions by defendants DuBois, Gateway, Allen, Chen, Navarro, DiGilarmo, Fugate, and McClure were taken pursuant to a policy established under color of state law for the control of patients like defendant Wommer, Complaint, Paragraphs 31, 34, 35, 36, 39, 50, 54, 59, they must show that the policies attacked have a close connection to the deprivation alleged. Canton v. Harris, 489 U.S. 378, ___, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412, 428 (1989) ("[R]espondent must still prove that the deficiency in training actually caused the police officers' indifference to her medical needs.") (emphasis added; footnote omitted). Canton v. Harris, quoting the plurality opinion in Oklahoma City v. Tuttle, explained the reason for this:
"Obviously, if one retreats far enough from a constitutional violation some municipal `policy' can be identified behind almost any ... harm inflicted by a municipal official; for example, [a police officer] would never have killed Tuttle if Oklahoma City did not have a `policy' of establishing a police force. But Monell must be taken to require proof of a city policy different in kind from this latter example before a claim can be sent to a jury on the theory that a particular violation was `caused' by the municipal `policy.'" Tuttle, 471 U.S. [808], 823, 85 L.Ed.2d 791, 105 S.Ct. 2427 [2436].
Cf. also Id, at 833, n 9, 85 L.Ed.2d 791, 105 S.Ct. 2427 [2441, n. 9] (opinion of Brennan, J.).
489 U.S. at ___, n. 9, 109 S.Ct. at 1205, n. 9, 103 L.Ed.2d at 427, n. 9.

III.
As we have noted in Anderson v. Everett Area School District, 732 F.Supp. 39, 40-41 (W.D.Pa.1989), Section 1983 broadly speaking protects three classes of federal constitutional rights:[2] 1) specific *576 constitutional rights incorporated from the Bill of Rights into the Fourteenth Amendment and made applicable to the states, Graham v. Connor, 490 U.S. ___, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (Fourth Amendment right against objectively unreasonable use of force in arrest); Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (Eighth Amendment right against malicious and sadistic use of force to subdue convicted prisoner); 2) the Fourteenth Amendment's procedural protection against deprivation of liberty or property interests without due process, Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (property interest in employment requires some pretermination notice and opportunity to respond); Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (entitlement to public education requires notice and hearing before most school suspensions); and 3) substantive guarantees, Youngberg v. Romeo, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (persons in state custody have right to minimum level of habilitation); Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (persons cannot be involuntarily committed to mental institutionalization except upon clear and convincing proof of mental illness); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (proof beyond reasonable doubt required for criminal conviction).

A.
Plaintiffs herein can assert only a substantive due process claim. First, no express provision of the constitution or Bill of Rights guarantees plaintiffs' decedent a right to life. Secondly, plaintiffs do not contend that there is a procedural due process claim. It is plain that the random senseless act of violence perpetrated by defendant Wommer is not one for which a predeprivation hearing could have been provided. See Hudson v. Palmer, 468 U.S. 517, 535, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984) ("The controlling inquiry is solely whether the state is in a position to provide for predeprivation process"). It also goes without saying that no hearing could permit or excuse Wommer's attack.
Although plaintiffs do not expressly state the position, they may be claiming that they have a constitutionally protected interest created by the Pennsylvania Mental Health Procedures Act, 50 P.S. §§ 7102, 7301-05, which requires that they be afforded a due process hearing prior to the transfer of a dangerous patient like Wommer to a less restrictive facility.
Their claim of constitutionally protected interest which justifies their assertion of liability logically requires that they demand standing in any transfer which may impair that interest. This claim, however, is foreclosed not only by the absence of any common law history of private party standing to challenge modification of custodial relationships, but more directly by the Supreme Court's ruling in O'Bannon v. Town Court Nursing Center, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980) as Justice Stevens stated, in rejecting a due process challenge by nursing home patients to Medicaid decertification of their facility without their participation in any decertification hearing:
The simple distinction between government action that directly affects a citizen's legal rights, or imposes a direct restraint on his liberty, and action that is directed against a third party and affects the citizen only indirectly or incidentally, provides a sufficient answer to all of the cases on which the patients rely in this Court.
447 U.S. at 788, 100 S.Ct. at 2476. The defendants' discharge of their duties toward defendant Wommer under the Mental Health Procedures Act, whether in accord with or in violation of their duties under the Act toward Wommer, simply does not implicate any constitutionally protected interest in life, liberty or property of the plaintiffs or of plaintiffs' decedent.

B.
Plaintiffs, finally, cannot state a substantive due process claim. In an attempt *577 to avoid the holding of Deshaney v. Winnebago County Department of Social Services, 489 U.S. ___, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) that there is no substantive due process right as against the state or state actors to be protected from criminal activity of private persons or from private violence generally, plaintiffs attempt to analogize their position to that of the plaintiffs in Nishiyama v. Dickson County, 814 F.2d 277 (6th Cir.1987) and in Stoneking v. Bradford Area School District, 882 F.2d 720 (3d Cir.1989) (Stoneking II). Neither comparison is apt.
Plaintiffs suggest that by providing Wommer the means and opportunity to commit a crime  by refusing to restrain him more closely, by disregarding his fascination with weapons  the defendants are equivalent to the defendants in Nishiyama who allowed a prisoner-trusty to operate a police vehicle unsupervised. The prisoner in the Nishiyama case, while operating the police vehicle alone, stopped a car driven by Nishiyama on a lonely roadway and beat her to death. To the extent that the majority holding in Nishiyama survives analysis, however, it does so only because the defendants in Dickson County clothed that prisoner-trusty with the symbols of authority  made him a de facto state actor  which allowed him to stop Ms. Nishiyama. Without that peculiarity, there would be no constitutionally significant difference between Nishiyama and Martinez v. California, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) in which the Supreme Court rejected the argument that the actions of a violent criminal who murdered a girl five months after his release from prison by a parole board acting against a recommendation of no parole constituted state action chargeable to the parole board:
A legislative decision that has an incremental impact on the probability that death will result in any given situation ... cannot be characterized as state action depriving a person of life just because it may set in motion a chain of events that ultimately leads to the random death of an innocent bystander.
444 U.S. at 281, 100 S.Ct. at 557. But, the plaintiffs in this matter may argue, the decisions to downgrade Wommer's treatment did not have simply an "incremental impact" on Wommer's murder of Lee; they are alleged to be the immediately precipitating factor. This argument, however, collapses together the financial incentives to "dump" which are allegedly built into the Pennsylvania Mental Health System, which is the result of a legislative decision of the Martinez v. California type, and the individual patient care decision to place this or that patient in a given treatment program, which is not under any circumstances state action. Blum v. Yaretsky, supra, 457 U.S. at 1007-1011, 102 S.Ct. at 2787-2789.
As for the Third Circuit's opinion in Stoneking II, plaintiffs again founder on the distinction between the public employee status of Edward Wright, a high school band director who allegedly coerced a minor student in his custody into engaging in sexual acts, and that of Wommer. Wommer can in no sense be considered a state actor. Further, the plaintiffs' decedent was not in defendants' custody, and as Judge Waldman has observed in this context.
It is the status of the victim of allegedly unconstitutional conduct and not that of the perpetrator that is determinative of the duty owed by the state and the rights conferred on the complainant.
Griffin v. Carlisle, No. 89-603 slip opinion, 4, 1989 WL 107126 (E.D.Pa. September 15, 1989) (food service worker at juvenile detention center does not have a constitutional right to provision of security against inmate attack.)
Finally, because no federally based cause of action is alleged against defendant Wommer, this Court lacks jurisdiction over any claims against him. See Finley v. United States, 490 U.S. ___-___, ___, 109 S.Ct. 2003, ___, 104 L.Ed.2d 593, 600-04 (1989).
NOTES
[1] Wommer had previously been hospitalized at DuBois from July 9-14, 1986, December 3-22, 1986, and December 27, 1986 through January 18, 1987. We rely for our discussion of the facts of this case on plaintiffs' allegations as set forth in their Brief Opposing Motions to Dismiss.
[2] Section 1983 also provides a federal cause of action for violation of federal statutory rights, provided that Congress directed that the remedy of that particular federal statutory scheme was not exclusive. Middlesex County Sewerage Authority v. National Sea Clammers' Association, 453 U.S. 1, 20-21, 101 S.Ct. 2615, 2626-27, 69 L.Ed.2d 435 (1981). Plaintiffs do not argue that there is a relevant federal statute.