**Khushro GHANDI; et al., Plaintiffs,**

**Khushro Ghandi; Andrew Rotstein; Richard Magraw; Randolph Wedler; Barbara Gettel; Elizabeth Moriarty; Matthew Moriarty; Jacqueline Cotton; Stuart Bernsen, Plaintiffs-Appellants,**

v.

**POLICE DEPARTMENT OF the CITY OF DETROIT, et al., Defendants,**

**Gerald Fayed; Philip Mercado and Vernon Higgins, Defendants-Appellees.**

No. 86–1201.

United States Court of Appeals, Sixth Circuit.

Argued April 16, 1987.

Decided July 13, 1987.

Rehearing and Rehearing En Banc Denied Aug. 31, 1987.

Mayer Morganroth, Southfield, Mich., for plaintiffs-appellants.

Timothy Garren, U.S. Dept. of Justice, Washington, D.C., John F. Daly, Barbara L. Herwig, Civ. Div., Dept. of Justice, Washington, D.C., Mark W. Pennak, argued, for defendants-appellees.

Before MARTIN, JONES, and MILBURN, Circuit Judges.

MILBURN, Circuit Judge.

Plaintiffs, members and former members of the National Caucus of Labor Committees ("NCLC"), appeal the district court's entry of an involuntary dismissal pursuant to Federal Rule of Civil Procedure 41(b), in this civil rights action arising from the investigation and infiltration of the NCLC by the Federal Bureau of Investigation ("FBI") from 1970 to 1974. For the reasons set forth below, we affirm on the basis of the district court's findings of fact, which have not been challenged on appeal as clearly erroneous.

### I.

On July 3, 1974, plaintiffs filed their complaint "alleging that an FBI investigation of the NCLC, the use of defendant Higgins as a paid informant, various unlawful acts committed by Higgins as an informant, and a search of the NCLC Detroit headquarters violated plaintiffs' first, fourth, and ninth amendment rights." *Ghandi v. Police Department*, 747 F.2d 338, 341 (6th Cir.1984) ("Ghandi I"). Along with Higgins, the named defendants included FBI agents Gerald Fayed and Philip Mercado (as Higgins' supervisors), the FBI, the Detroit Police Department, and several individual Detroit police officers (for participating in the search).

On April 11, 1975, the district court dismissed the claims against the FBI on the basis of sovereign immunity. 66 F.R.D. 385 (E.D.Mich.1975). After six years of discovery, the district court granted summary judgment in favor of the individual federal defendants on the basis of qualified immunity. On October 21, 1982, the district court granted summary judgment to the uniformed officers of the Detroit Police Department on the ground that they did not participate in the search.

In November of 1982, the case went to trial on plaintiffs' claims against the De-

troit Police Department and the individual, nonuniformed police officers. At the close of plaintiffs' evidence, the district court, which tried the case without a jury, granted the remaining defendants' motion for an involuntary dismissal under Rule 41(b).

On appeal this court affirmed the dismissals of all defendants except FBI agents Gerald Fayed and Philip Mercado and informant Vernon Higgins. In *Ghandi I*, we determined that disputed issues were present "as to whether Higgins' conduct as an informant exceeded the boundaries of legitimate surveillance." 747 F.2d at 349. As to FBI Agent Mercado, we noted that according to NCLC member Christopher Martinson, "Higgins told Martinson that FBI agent Mercado had instructed Higgins 'to suggest provocative actions that were illegal for NCLC and myself [Martinson] to do.' ... [S]uch orders, if true, go beyond mere surveillance.... Summary judgment in favor of Mercado was error." *Id.* at 351.

Finally, the panel also found summary judgment in favor of FBI Agent Fayed to be inappropriate:

Opposed to mere surveillance, however, was conduct "confessed" to Martinson by Higgins on June 19, 1974. Higgins told Martinson he had stolen property from Martinson's campaign headquarters "on behalf of the Federal defendants" ... including two pieces of mail, "a mailing list of friends and parents of U.S. Labor Party members and potential financial contributors." Higgins further advised Martinson that he had been instructed by co-defendants Mercado and Fayed to take these materials.... Supervisory personnel are subject to liability where evidence establishes that they "authorized [or] approved ... the unconstitutional conduct of the offending officers." *Hays v. Jefferson County, Kentucky,* 668 F.2d 869, 874 (6th Cir.), *r'hg denied,* 673 F.2d 152, *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982). This sworn testimony, although denied by defendants, creates a question of fact prohibiting summary judgment prior to trial.

*Id.* at 351–52.

On remand, the district court conducted a five-day bench trial. At the close of plain-tiffs' case, the district court granted involuntary dismissals pursuant to Rule 41(b) as to all defendants. The district court found as a matter of fact that there was no evidence upon which to establish liability against agents Fayed and Mercado. First, the district court found that the FBI agents had not placed informant Higgins in the NCLC as Higgins was already inside the organization before he (Higgins) approached the FBI and offered to provide information. Second, the district court found that agents Fayed and Mercado did not instruct or encourage informant Higgins "to engage in activities designed to disrupt Plaintiffs' activities or discredit their organizations and they did not give him instructions to commit illegal acts. They told him to perform normal surveillance and information gathering.... They told him to withdraw if he could." Joint Appendix at 103. The district court continued:

Furthermore, they told him he should be a follower not a leader and gave him no instructions to steal mail or in any way engage in the activities that were condemned by the Sixth Circuit in the opinion, such as disruption of NCLC political activities, to sow of [sic] distrust and suspicion among members, provocative conduct that resulted in misrepresentation of the parties' goals, disruption of Martinson's campaign for public office, or participation in violent picket lines, stealing documents and the like. I find as a matter of fact that at no time did either Agents Fayed or Mercado direct Higgins to act in that manner.

There is no evidence that I find that these agents at any time authorized or approved unconstitutional conduct....

Joint Appendix at 103–04.

Finally, the district court dismissed Higgins:

I am going to make no findings as to whether Higgins did or did not commit any specific acts which Martinson testified he said he had committed except to find that if any of such acts were com-

mitted, he committed them on his own behalf and not on instructions or on behalf of Agents Mercado or Fayed, and thus there can be no violation of First Amendment rights by Higgins because an individual acting on his own cannot deprive a person of First Amendment rights, there must be governmental action.

. . . .

Therefore, there can be no claim of First Amendment violation against Higgins alone because the findings of fact I have made are that he did not act as a result of government action. The agents, the FBI agents, the only governmental people involved in this case, did not cause, direct, instruct or suggest anything more than mere surveillance and passive information gathering. If Higgins did commit any of the actions plaintiffs claim he committed, he did so on his own, and an individual cannot violate another's First Amendment rights. There must be state action. Having found no liability on the part of the agents, there can be no liability as to Higgins alone.

In addition, there is no evidence that the agents authorized or approved of those actions if he took them. . . .

Joint Appendix at 105–07.

## II.

On appeal plaintiffs first argue the district court erred in not considering whether agents Fayed and Mercado were grossly negligent in their supervision of Higgins. In this connection, plaintiffs further argue the district court erred in excluding evidence regarding agent Fayer's knowledge of Higgins' background. Second, plaintiffs

argue the district court failed to correctly apply the law in determining that Higgins could not be a state actor based on its earlier finding that the agents did not direct him to commit unconstitutional acts. Finally, plaintiffs argue the district court erred in barring questions related to the search of the NCLC office on June 20, 1974.

### A. Gross Negligence—Fayed and Mercado

Plaintiffs argue the district court erred in dismissing agents Fayed and Mercado because the court failed to "make findings based upon considerations of gross negligence, callous or deliberate indifference, reckless disregard or any other culpable state of mind, short of an intentional tort." Brief at 14. In our view, plaintiffs failed to preserve these claims for trial. Plaintiffs' only argument in this regard is that these claims were submitted in their original complaint. However, the issues tried in the present case were delineated in the final pretrial order, which superseded the complaint.

The pretrial order "shall control the subsequent course of the action unless modified by a subsequent order." Fed.R. Civ.P. 16(e). "Thus, . . . an attempt to pursue any issue not listed in the order may be rejected by the trial court." 6 C. Wright and A. Miller, *Federal Practice and Procedure* § 1527, at 605 (1971); *see also Hale v. Firestone Tire & Rubber Co.*, 756 F.2d 1322, 1335 (8th Cir.1985). The pretrial order filed in the present case contains no allegations of gross negligence, callous or deliberate indifference, or reckless disregard.[1] Rather, in the pretrial order,

---

**1.** We further note that on repeated occasions the district court expressed its view that negligence was not at issue. *See, e.g.,* Trial Transcript, Vol. I, at 94–95; Vol. II, at 119, 157–58. In our view, plaintiffs were under some obligation during these colloquies to inform the court of their view of the relevant issues. However, plaintiffs' counsel at one point merely stated that the pretrial order stipulated the relevant issues. *Id.*, Vol. I, at 95. As noted, the pretrial order contains no allegations of gross negligence, callous or deliberate indifference, or reckless disregard.

Moreover, after the court emphasized that the trial would have to be restricted to the issues of (1) whether Higgins' actions exceeded legitimate surveillance, and (2) whether the agents induced, encouraged or directed Higgins to commit unconstitutional acts, plaintiffs' counsel responded, with no elaboration, "I agree, Your Honor, to a degree." *Id.* The trial record thus lends further support to our view that plaintiffs never adequately brought to the court's attention that they were attempting to hold the agents liable on a theory of gross negligence or

plaintiffs alleged only simple negligence in stating "defendants Fayer and Mercado negligently failed to prevent this conspiracy." [2] Pretrial Order at 2. Further, plaintiffs alleged that the agents "directed, encouraged, condoned, approved and/or ratified the unconstitutional actions committed by defendant Higgins." *Id.*

As noted earlier, the district court specifically found that the agents "did not instruct [Higgins] or encourage him," and "that at no time did either Agents Fayed or Mercado direct Higgins to act [in an unconstitutional] manner." The district court further found that "there is no evidence that either of these agents authorized, directed or approved unconstitutional conduct by Higgins." Joint Appendix at 103–04. These findings directly address the issues framed by plaintiffs in the pretrial order. As plaintiffs have not argued that these findings are clearly erroneous, the dismissals of agents Fayed and Mercado are affirmed.[3]

### B. Governmental Action—Higgins

Plaintiffs argue that even if the dismissals of agents Fayed and Mercado are upheld, we should nonetheless reverse the dismissal of informant Higgins. As noted, the district court held that any unconstitutional acts committed by Higgins could not be considered government action, as is required to support a claim of a violation of the First Amendment. *See generally* 2 R. Rotunda, J. Nowak, and J. Young, *Treatise On Constitutional Law* § 16.1 (1986).

■ Plaintiffs first argue that Higgins' status as a paid informant per se establishes that he was a governmental actor. In support of this proposition, plaintiffs rely on *Hoffa v. United States,* 385 U.S. 293, 311, 87 S.Ct. 408, 418, 17 L.Ed.2d 374 (1966), wherein the Supreme Court stated that although the use of informers is a constitutionally acceptable police practice, "[t]his is not to say that a secret government informer is to the slightest degree more free from all relevant constitutional restrictions than is any other government agent." Although we of course have no quarrel with this statement of law, we reject plaintiffs' invitation to establish a per se rule that the activities of paid government informants must always be considered government action.

The determination of government action depends on the facts of each case, through "sifting facts and weighing circumstances." *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961). We have no doubt that paid government informants often are found to be government actors. *See, e.g., United States v. Cella,* 568 F.2d 1266, 1282 (9th Cir.1978); *Matje v. Leis,* 571 F.Supp. 918, 927 (S.D. Ohio 1983).[4]

---

deliberate indifference. We further note that plaintiffs never moved for modification of the pretrial order, *see* Fed.R.Civ.P. 16(e), and that plaintiffs made no offer of proof as to their alleged claims of gross negligence or deliberate indifference, *see* Fed.R.Evid. 103(a)(2). Under all these circumstances, we do not believe substantial justice would be served by a reversal of the district court's judgment. *See* Fed.R.Civ.P. 61.

**2.** Simple negligence is not sufficient to support a civil rights action for the violation of constitutional rights. *Hays v. Jefferson County,* 668 F.2d 869, 872–74 (6th Cir.), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982).

**3.** For this same reason, we reject plaintiffs claim that the district court erred in excluding evidence regarding Fayed's knowledge of Higgins' background. *See Hale, supra,* 756 F.2d at 1335 ("a party may not offer evidence or advance theories during trial which violate the terms of a pretrial order."); 6 C. Wright and A.

Miller, *supra,* § 1527, at 605–07 ("testimony ... on issues not raised in the order ... may be excluded at the trial."). Here again we note that plaintiffs failed to seek to take advantage of the exception provided in Fed.R.Civ.P. 16(e) "to prevent manifest injustice" as they never sought to amend the pretrial order, or, for that matter, advise the district judge that they intended to proceed on a theory or gross negligence, etc.

**4.** Plaintiffs rely heavily on *Matje,* wherein the court stated that "cases which have considered the position of informants in law enforcement activities appear to have uniformly considered the informants to be 'agents' of the police." 571 F.Supp. at 927. We note that in *Matje,* the issue was whether the informant acted "under color of state law" for purposes of satisfying the elements of § 1983. Thus, *Matje* is of limited applicability to the present case because "although ... conduct satisfying the state-action requirement ... satisfies the statutory requirement of action under color of state law, it does

Nonetheless, we believe courts must look to all the facts to determine whether a paid government informant "may fairly be said to be a [government] actor ... because he has acted together with or has obtained significant aid from [government] officials, or because his conduct is otherwise chargeable to the State." *Lugar v. Edmundson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). Otherwise, the courts will be in essence applying a sort of reverse *respondeat superior* doctrine. *Cf. Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir.1975) ("Acts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983."), *cert.* dismissed, 429 U.S. 118, 97 S.Ct. 514, 50 L.Ed.2d 269 (1976).[5]

■ Plaintiffs next argue that Higgins should be held, as a matter of law, to have been a state actor because "significant government involvement" underlay Higgins' activities. However, the district court specifically found that any unconstitutional acts committed by Higgins "were committed ... on his own behalf." Joint Appendix at 105. Moreover, the district court also found that Higgins was in place within the NCLC when Higgins approached the FBI and that the agents did not place him there. Joint Appendix at 103. In our view, these findings, which we cannot say are clearly erroneous, require affirmance of the district court's dismissal of Higgins.

## C. Evidence Regarding The Search

Finally, we find no error in the district court's restriction on questions regarding the details of the search of the NCLC Detroit offices. This evidence went to plaintiffs' assertion that the kidnapping was contrived in order to enable the FBI to obtain a search warrant. Plaintiffs complain that the court refused to hear "powerful circumstantial" evidence that the FBI developed photographs taken during the raid after it was determined Higgins was not kidnapped as well as evidence that the photographs were blown up to obtain serial numbers off office machines and names off contact cards. Plaintiffs correctly point out that this evidence was relevant to their claim that the FBI's purpose in searching the office was not to find Higgins.

■ However, the district court did not restrict questions regarding whether the defendant agents participated in the planning or execution of the alleged contrived kidnapping. Joint Appendix at 55. After hearing plaintiffs' proof, the court found there was "no involvement" of the agents in the search "beyond Agent Mercado's receipt of information that Vernon Higgins had called [agent] Ball and his suggestion to Ball that he relay that information to the Detroit FBI office." Joint Appendix at 107. "[T]here is no involvement at all with Agent Fayed in the search." *Id.* at 107–08.

These findings have not been challenged as clearly erroneous. Therefore, any evidence that tended to show the search was contrived could not have been relevant to the liability of either Fayed or Mercado. Accordingly, it is not "inconsistent with substantial justice" for us to refuse to disturb the district court's judgment on the basis of plaintiffs' claim that the district court erred in limiting the evidence regarding the details of the search. *See* Fed.R. Civ.P. 61; *Ghandi I*, 747 F.2d at 355.

### III.

Accordingly, the judgment of the district court is AFFIRMED.

NATHANIEL R. JONES, Circuit Judge, concurring.

I concur in Judge Milburn's opinion affirming the judgment of the district court.

---

not follow from that that all conduct that satisfies the under-color-of-state-law requirement would satisfy the ... requirement of state action." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 n. 18, 102 S.Ct. 2744, 2753 n. 18, 73 L.Ed.2d 482 (1982).

5. For example, it is surely relevant whether the informant is paid a salary to infiltrate an organization full-time, or whether the informant receives periodic payments in return for discrete projects performed. The former case obviously presents a much more compelling fact situation for a finding that all acts performed by the informant "are chargeable to the state" than does the latter. In the present case, Higgins was paid on a "c.o.d. basis" for information delivered to the FBI. *See* Joint Appendix at 146.

I write separately only to set forth my interpretation of today's decision. It is my understanding that the district court's dismissal of plaintiffs' claims that the individual FBI agents were grossly negligent in the supervision or handling of their paid informant is affirmed solely because plaintiffs failed to preserve such claims for trial. The factual allegations of the informant's conduct, as well as the FBI agents' knowledge of such conduct, raise serious constitutional questions concerning the duty of government agents to exercise some modicum of control over their informants and to protect the general public (and especially investigatory targets) from the illegal acts of such informants. *Cf. Nishiyama v. Dickson County,* 814 F.2d 277, 281–83 (6th Cir.1987) (en banc) (state actors' grossly negligent supervision of jail trustee resulting in injury to another may give rise to § 1983 liability).