**Deon L. THOMAS, Plaintiff,**

v.

**Bruce PEARL, individually and in his representative capacity as Assistant Basketball Coach of the University of Iowa, Defendant.**

No. 91–2308.

United States District Court, C.D. Illinois, Danville Division.

July 1, 1992.

J. Steven Beckett, Thomas R. Kelso, Carol A. Dison, Beckett, Crewell & Kelso, Urbana, Ill., for Deon L. Thomas.

George G. Bryan, Phebus, Tummelson, Bryan & Knox, Urbana, Ill., John J. Kitchin, Linda J. Salfrank, Swanson, Midgley, Gangwere, Clarke & Kitchin, Kansas City, Mo., for National Collegiate Athletic Ass'n.

Grant K. Dugdale, John M. Parmeter, Office of Atty. Gen. of Iowa, Bonnie J. Campbell, Gordon E. Allen, Atty. Gen. of Iowa, Des Moines, Iowa, for Bruce Pearl.

## ORDER

HAROLD ALBERT BAKER, District Judge.

The plaintiff, Deon Thomas, is a student at the University of Illinois and a member of the University of Illinois men's basketball team. The defendant, Bruce Pearl, is an assistant basketball coach at the University of Iowa who tried to recruit Thomas to attend that school. In connection with the recruitment process, Pearl spoke with Thomas on the telephone and recorded their conversation. Thomas did not know that Pearl was recording their telephone conversation nor did he consent to the recording. Pearl disclosed the tapes of his conversation with Thomas to the National Collegiate Athletic Association ("NCAA") and, according to Thomas, he also disclosed

them to officials at the University of Illinois. On the basis of the tape recorded conversation between Thomas and Pearl, the NCAA conducted an investigation of recruiting violations on the part of the University of Illinois. Thomas sued Pearl in state court for damages in Count I under the Illinois Eavesdropping Statute, Ill.Rev. Stat. ch. 38 para. 14–1 *et seq.*, and in Count II under the federal wiretapping statute found in the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.* Pearl removed the case to this court pursuant to 28 U.S.C. § 1441. This court has jurisdiction of the case under 28 U.S.C. § 1331. Pearl has moved for summary judgment. For the reasons discussed in this order, the court grants Pearl's motion on both counts.

### Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir.1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1393, 84 L.Ed.2d 782 (1985). "[I]n determining whether factual issues exist, a reviewing court must view all the evidence in the light most favorable to the non-moving party." *Black v. Henry Pratt Co.*, 778 F.2d 1278, 1281 (7th Cir. 1985). However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir.1988).

### I. *The Federal Wiretapping Statute*

■ Thomas claims that when Pearl recorded a telephone conversation he had with Thomas and disclosed the contents of that conversation, he violated the following provision of the United States Code:

(1) Except as otherwise specifically provided in this chapter any person who—

(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication; ...

(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire oral, or electronic communication in violation of this subsection; ....

shall be punished [by civil or criminal liability].

18 U.S.C. § 2511(1)(a), (c). The statute, however, provides exceptions for situations where one of the parties to the intercepted conversation consents to the interception. 18 U.S.C. § 2511(2)(c) provides:

It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

There is no dispute that Pearl was a party to the telephone conversation at issue in this case. Pearl argues that as a basketball coach for the University of Iowa he was "acting under color of law" so that under § 2511(1)(c) he cannot be liable for recording the conversation. Thomas, on the other hand, argues that Pearl was not acting "under color of law" because he was not authorized by the State of Iowa to engage in wiretapping.

Congress has not been so kind as to define the term "under color of law," so its meaning must be gleaned from other sources. The court first observes that for the purposes of civil rights statutes such as

42 U.S.C. § 1983 and 18 U.S.C. § 242, acting "under color of law" is equivalent to "state action." *Lugar v. Edmonson Oil,* 457 U.S. 922, 929, 102 S.Ct. 2744, 2749–50, 73 L.Ed.2d 482 (1982); *NCAA v. Tarkanian,* 488 U.S. 179, 109 S.Ct. 454, 457 n. 4, 102 L.Ed.2d 469 (1988). If this were a civil rights action, therefore, Pearl's actions would undoubtedly have been "under color of law." Pearl was acting on behalf of the University of Iowa which is an agency of the State of Iowa. He would be a state actor even if his actions were unauthorized by state law. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), is distinguishable. That case involved the unique situation of a public defender who, like Pearl, was employed by a government entity. However, unlike Pearl, because of the nature of her job, she was required to act independently and her actions in defending her clients could not be controlled by the state.

The court is aware that "under color of law" could mean something different in the federal wiretapping statute than it means in civil rights statutes. After all, labelling a party's actions as "under color of law" has vastly different consequences in the two types of statutes. Actions "under color of law" in the context of a civil rights statute expose the actor to liability. On the other hand, certain actions "under color of law" for purposes of the wiretapping statute do not give rise to liability even though those actions would otherwise have been illegal. Perhaps Congress had different purposes for the "under color of law" provisions in the two statutes.

Nonetheless, the court in this case will adhere to the meaning of "under color of law" that has been clearly established in the context of civil rights legislation. Most cases dealing with § 2511(2)(c) concern re-

cordings made by law enforcement officers. Many cases also concern recordings made by private citizens who are acting under the direction of law enforcement officers. These cases have, for the most part, held that such informants are acting "under color of law" as long as there is sufficient government involvement. *See, e.g., United States v. Craig,* 573 F.2d 455, 476 (7th Cir.1977); *United States v. Shields,* 675 F.2d 1152, 1156 (11th Cir. 1982); *United States v. Shedan,* 651 F.2d 336 (5th Cir.1981). The analysis in *Craig* is similar to that in civil rights cases concerning whether a private individual is considered a state actor when he or she acts in concert with or under the direction of a state actor. *See, e.g., Ghandi v. Police Department of Detroit,* 823 F.2d 959, 963–64 (6th Cir.1987) (a paid informant is a state actor if he "acted together with or has obtained significant aid from [State] officials, or because his conduct is otherwise chargeable to the State.")

The facts of this case are somewhat unique. When Congress enacted § 2511(2)(c), it probably did not specifically consider that section's application to a basketball coach at a state university. Even if Congress was primarily concerned in § 2511(2)(c) with law enforcement activities, however, Congress probably did not mean to limit § 2511(2)(c) to the law enforcement context. Congress used the term "law enforcement" in other parts of the wiretapping statute. *See* 18 U.S.C. § 2517, 2518(1)(a). Therefore, if Congress had meant "law enforcement," it would have used that term rather than "under color of law."[1] In addition, when Congress enacted the wiretapping statute in 1968, the Supreme Court had already attributed to the phrase "under color of law" a meaning basically synonymous with state action, and Congress presumably knew of that meaning and did not object to it.

---

**1.** On the other hand, in contrast to the "under color of law" provision of § 2511(2)(c), 18 U.S.C. § 2512(2) provides:

It shall not be unlawful under this section for
. . .
(b) an officer, agent, or employee of, or a person under contract with, the United States,

a State, or a political subdivision thereof, in the normal course of the activities of the United States, a State, or a political subdivision thereof, to . . . .
The court points out that any argument based on the assumption that Congress uses terms consistently must be taken with a grain of salt.

*Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

■ The court finds that Pearl was acting under color of law when he recorded the conversation with Thomas. Not only did Pearl make the recording while attempting to recruit basketball players to the University of Iowa. He also did so at the direction of his superiors at the University of Iowa Athletic Department using equipment supplied by the University. The plaintiff contends that under *NCAA v. Tarkanian*, 488 U.S. 179, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988), because Pearl claims to have made the recordings in order to comply with NCAA regulations, he was not acting under color of law. The plaintiff's reliance on *Tarkanian* is misplaced. That case held that the NCAA was not a state actor and therefore, the plaintiff could not maintain a § 1983 action against it. The plaintiff is correct that compliance with NCAA regulations alone does not transform Pearl into a state actor. However, it is undisputed that Pearl was also acting within the scope of his employment as assistant basketball coach at the University of Iowa.[2] Unquestionably, the plaintiff in *Tarkanian* could have maintained a § 1983 action against UNLV, even for actions that UNLV took in compliance with NCAA regulations.

■ Even if Pearl was not acting "under color of law," the court finds that Pearl is not liable under the federal wiretapping statute because his actions fall into the "consent" exception of 18 U.S.C. § 2511(2)(d), which provides:

It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

Thomas argues that § 2511(2)(d) does not apply to Pearl's actions because Pearl's intent in recording the telephone conversations was "to interfere with Plaintiff's prospective advantage and to invade Plaintiff's right of privacy." Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment at 14. According to Thomas, Pearl:

performed said acts of covert tape recording and disclosure of said telephone conversations with the intent to bring Plaintiff into public notoriety and to destroy the comfort of Plaintiff's life and peace and tranquility of mind, and to thrust upon Plaintiff, unsought, unwarranted and undesired publicity and notoriety, utterly obnoxious to Plaintiff, and to annihilate and destroy the seclusion of Plaintiff's life.

Plaintiff's Complaint at 4.

Pearl argues, on the other hand, that his intent in recording the conversation was to expose the truth, not to harm Thomas. Even if the facts as Thomas presents them are true, however, under § 2511(2)(d), Pearl

---

2. As evidence that Pearl was not acting within the scope of his employment, and therefore not acting under color of law in making the recordings, the plaintiff cites a letter dated July 16, 1990 from Julia Mears, Assistant to the President of the University of Iowa to J. Steven Beckett, the plaintiff's attorney, Exhibit B, Affidavit of Doug Young. This letter was in response to a letter of July 11, 1990 from Mr. Beckett to Doug Young, Custodian of Records at the University of Iowa, in which the plaintiff's counsel requested Mr. Young to supply him with copies of the tape recorded conversations. In her letter, Ms. Mears states that the tapes are not in the University's possession but are in possession of Pearl's private attorney. The court agrees that this might be evidence that

Pearl was not acting within the scope of his authority. However, it is not terribly persuasive. Nowhere does Ms. Mears state that the tapes were not the property of the University of Iowa. She merely states that on July 16, 1990, they were not in the University's possession. In fact, the letter indicates that she knew precisely which tapes Mr. Beckett was referring to and she knew the location of those tapes. This greatly weakens the plaintiff's argument that the University of Iowa had no involvement with the tapes. Furthermore, the plaintiff has undermined any argument that Pearl was not acting within the scope of his employment by suing Pearl in his representative, as well as individual capacity.

was entitled to record his telephone conversations with Thomas. Before it was amended, § 2511(2)(d) read:

It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State *or for the purpose of committing any other injurious act.* (emphasis added).

Congress deleted the language "or for the purpose of committing any other injurious act" as part of the Electronic Communications Privacy Act of 1986. The legislative history of that Act makes clear that by deleting the "other injurious act" language, Congress intended to protect a party to a communication from liability for intercepting that communication unless by intercepting the communication, he or she is violating another law. According to the Senate report:

Under current Federal law it is permissible for one party to consent to the interception of a conversation unless that interception is for illegal, tortious or other injurious purposes such as blackmail. In numerous court cases the term "other injurious purposes" has been misconstrued. Most troubling of these cases have been attempts by parties to chill the exercise of first amendment rights through the use of civil remedies under this chapter. For example, in *Boddie v. American Broadcasting Co.*, 731 F.2d 333 (6th Cir.1984), the plaintiff, whose conversations were recorded by a journalist, sued. Despite the consent of the reporter who was a party to the conversation, the plaintiff claimed that the recording of the conversation was illegal because it was done for an improper purpose, to embarrass her.... [I]t is clear from the facts of the case that the term "improper purpose" is overly broad and vague. The court's opinion suggests

that if the network intended to cause "insult and injury" to plaintiff Boddie, she might be entitled to recover. This interpretation of the statute places a stumbling block in the path of even the most scrupulous journalist. Many news stories have been brought to light by recording a conversation with the consent of only one of the parties involved—often the journalist himself. Many news stories are embarrassing to someone. The present wording of section 2511(2)(d) not only provides such a person with a right to bring suit, but it also makes the actions of the journalist a potential criminal offense under section 2511, even if the interception was made in the ordinary course of responsible news-gathering activities and not for the purpose of committing a criminal act or a tort. Such a threat is inconsistent with the guarantees of the first amendment. Insomuch as [this statute] continues to prohibit interceptions made for the purpose of committing either a crime or a tort (including defamation), the public will be afforded ample protection against improper or unscrupulous interception.

S.Rep. No. 541, 99th Cong., 2d Sess. 17 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3571–72 ("Senate Report").

Of course, Pearl probably does not have as weighty a First Amendment right to record his conversations with basketball recruits like Thomas and pass them on to the NCAA as the First Amendment right of Geraldo Rivera (the reporter in *Boddie*) to record conversations with public figures and then publish the conversations. Nonetheless, the Senate Report shows that the 1986 amendment to § 2511(2)(d) exempts a party to a conversation from liability for recording that conversation unless the purpose for recording the conversation was the commission of a crime or a tort. *See also Boddie v. ABC,* 881 F.2d 267, 269–70 (6th Cir.1989) (1986 amendment to § 2511(2)(d) eliminated right of action that existed before the amendment rather than merely clarifying existing law).

It follows that in order for Thomas' claim under the federal wiretapping statute to

succeed, state or federal law must recognize Pearl's purposes in recording his conversation with Thomas as unlawful. In other words, Pearl's conduct must violate a criminal or civil law independent of § 2511(1). As examples of purposes that would make a party to a conversation liable for recording that conversation, the Senate Report lists "blackmail" and "defamation." *See e.g.* 18 U.S.C. § 873, 875(d); *Whitby v. Associates Discount Corp.,* 59 Ill.App.2d 337, 207 N.E.2d 482 (1965). Thomas argues that Pearl's actions caused him to suffer all kinds of vague and unidentified injuries, such as interfering with Thomas' "advantage" and thrusting him into "public notoriety." Even assuming the existence of these injuries, aside from the alleged violation of the federal wiretapping statute and the Illinois Eavesdropping Statute,[3] Thomas has not alleged, nor provided evidence of any unlawful conduct by Pearl. Since Pearl was a party to the conversation with Thomas, Pearl is exempt from liability the under federal wiretapping statute.

## II. The Illinois Eavesdropping Statute

Ill.Rev.Stat. ch. 38 para. 14–2 provides:

■ A person commits eavesdropping when he:

(a) Uses an eavesdropping device to hear or record all or any part of any conversation unless he does so (1) with the consent of all of the parties to such conversation or (2) in accordance with [certain criminal provisions not at issue here]; or

(b) Uses or divulges … any information which he knows or reasonably should know was obtained through the use of an eavesdropping device.

At Paragraph 14–6, the Illinois Eavesdropping Statute provides civil remedies to parties to a conversation who are injured by eavesdropping.

Pearl first argues that the Illinois Eavesdropping Statute does not apply to his conduct because he recorded the conversation while he was in Iowa, and in Iowa his

conduct was not unlawful. It is unclear whether the Illinois Eavesdropping Statute applies when the party who records the conversation is outside of Illinois and the other party to the conversation is in Illinois. Pearl relies on *People v. Barrow,* 133 Ill.2d 226, 139 Ill.Dec. 728, 549 N.E.2d 240 (1989). In that case, an Illinois court refused to suppress testimony that was the product of eavesdropping when the conversation that was recorded occurred entirely within Maryland and when recording the conversation was legal in Maryland. The court held that even if it would have been illegal to record the conversation in Illinois, "[s]ince the eavesdropping was conducted entirely within the borders of Maryland, there can be no violation of section 14–2." *Id.* 13 Ill.Dec. at 745, 549 N.E.2d at 257. *Barrow,* however, is not conclusive in deciding this case because Thomas was using the telephone in Illinois when Pearl recorded the conversation from Iowa.

*People v. Accardo,* 195 Ill.App.3d 180, 141 Ill.Dec. 821, 551 N.E.2d 1349 (1990) is also inapposite to the facts of this case. In *Accardo,* an informant in Oklahoma placed calls to the defendant in Illinois and Oklahoma authorities tape recorded the conversations. In so doing, the Oklahoma authorities complied with Oklahoma law but not with Illinois law. The court refused to suppress the tape recordings. According to the court, "[t]he policy behind the exclusionary rule … is not forwarded by suppression of evidence obtained by others in conformance with laws governing their conduct." *Id.* at 190, 141 Ill.Dec. 821, 551 N.E.2d 1349. Thomas correctly points out, however, that in applying the exclusionary rule, the court in *Accardo* only considered whether excluding the evidence would deter future improper police conduct; the court did not consider the defendant's interest in not having the recordings used against him. However, the civil remedies for violations of the eavesdropping statute are designed not only to deter improper conduct but also to compensate injured

---

**3.** The court holds in the second part of this order that Pearl did not violate the Illinois Eavesdropping Statute.

plaintiffs. Just because the court in *Accardo* refused to suppress a tape which was recorded out of state, that does not necessarily mean that there is no civil liability in this case when a recording was made under similar circumstances.

The court, however, need not decide whether the Illinois Eavesdropping Statute applies to Pearl's conduct because the Supreme Court of Illinois has said that under that statute, Pearl cannot be liable. In *People v. Beardsley*, 115 Ill.2d 47, 56, 104 Ill.Dec. 789, 503 N.E.2d 346 (1986), the court held that eavesdropping does not occur when the person recording the conversation is either a party to the conversation or known by the participants to the conversation to be present. The court reasoned that:

> the eavesdropping statute was intended to protect individuals from the *surreptitious* monitoring of their conversations by the use of eavesdropping devices. As [prior cases] demonstrate, the statute is based on the assumption that if the parties to a conversation act under circumstances which entitle them to believe that the conversation is private and cannot be heard by others who are acting in a lawful manner, then they should be protected in their privacy.

*Id.* at 53, 104 Ill.Dec. 789, 503 N.E.2d 346 (emphasis in original). In *Beardsley*, the defendant sat in the back seat of a police car while officers conversed in the front seat. Unbeknownst to the officers, the defendant tape recorded their conversation. The court held that the defendant could not be guilty of eavesdropping because the officers, knowing that the defendant was listening in the back seat, had no expectation that their conversation was private. "Because the defendant witnessed the responses of the officers, he would have been competent to testify thereto and to describe the same. Hence, the defendant's record-

ing of the officers' conversations was not to obtain information which was otherwise inaccessible." *Id.* at 58, 104 Ill.Dec. 789, 503 N.E.2d 346. *See also Bender v. Board of Fire & Police Commissioners*, 183 Ill. App.3d 562, 563, 131 Ill.Dec. 881, 539 N.E.2d 234 (1989) ("*Beardsley* held ... that the eavesdropping statute did not prohibit the recording of a conversation by a party to the conversation."). *People v. Cole*, 186 Ill.App.3d 1002, 1006, 134 Ill.Dec. 638, 542 N.E.2d 1145 (1989) ([In *Beardsley*] the supreme court expressed its reasoning that a party to a conversation cannot be accused of listening secretly to what is said in private, or of surreptitiously intercepting a private conversation, because that party is competent to testify concerning the contents of the conversation, and could have taken notes or transcribed the conversation, rather than record it."). *Smith v. Associated Bureaus, Inc.*, 177 Ill.App.3d 286, 126 Ill.Dec. 616, 532 N.E.2d 301 (1989) (applying *Beardsley* to a civil case).[4]

Thomas argues that Pearl violated the Illinois Eavesdropping Statute because that statute, on its face, prohibits the recording of any conversation unless *all* of the parties to the conversation consent, and Thomas did not consent to Pearl's recording their conversation. *Beardsley*, however, rules out that argument, and this court must follow *Beardsley*. Thomas also tries to distinguish this case from *Beardsley* on the ground that *Beardsley* involved only the recording of a conversation and this case involves both recording and disclosure. That argument is without merit. *Beardsley* focused not on the method of the alleged violation, but on whether the party intercepting the conversation legitimately had access to that conversation. Under *Beardsley*, if a conversation is not private, then disclosing the contents of that conversation, whether verbally or by distributing a tape, cannot be unlawful. It would not

**4.** The court is aware that the Illinois Appellate Court's decision in *People v. Accardo*, 195 Ill. App.3d 180, 141 Ill.Dec. 821, 551 N.E.2d 1349 (1990) seems to conflict with *Beardsley*. The court in *Accardo* observed that had the Illinois Eavesdropping Statute applied, the Oklahoma officer's conduct in recording the conversations would have been in violation of that statute even though there was consent by one party to the conversations. *Id.* at 189, 141 Ill.Dec. 821, 551 N.E.2d 1349. The court in *Accardo* did not discuss *Beardsley*, which this court views as a controlling precedent.

make sense for the court to find that recording the conversation was lawful but that under the same statute, disclosing the recording was not. Because Pearl was a party to the conversation with Thomas, Pearl lawfully could repeat or report the words spoken even without recording them. Under *Beardsley*, he was entitled to record the conversation and disseminate the tapes.

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment (docket # 16) is GRANTED. The clerk shall enter judgment in favor of the defendant and against the plaintiff and for costs of suit. The plaintiff's Motion to Withdraw Subpoena (docket # 30) and his Motion For Leave to File Instanter (docket # 29) are moot. The NCAA's Motion to Quash (docket # 26) is also moot.